## SOUTHERN PAC. CO. v. WESTERN PACIFIC CALIFORNIA R. CO.

### No. 6226.

Circuit Court of Appeals, Ninth Circuit.

Nov. 14, 1932.

Conforming to opinion of Supreme Court in 284 U. S. 47, 52 S. Ct. 56, 76 L. Ed. 160, which reversed 46 F.(2d) 729.

C. O. Amonette, H. C. Booth, and C. W. Durbrow, all of San Francisco, Cal. (Guy V. Shoup, of San Francisco, Cal., of counsel), for appellant.

F. M. Angellotti, A. S. Hutchinson, and H. P. Tyler, all of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

This is the second time that the instant case has been before this court, on an appeal from a final decree entered by the District Court on February 28, 1930.

The decree permanently restrained the appellant, defendant below, from constructing, maintaining, or operating a partly completed railroad track upon any territory in San Mateo county, Cal., lying east of the location of the proposed railroad of the appellee, between the appellee's said proposed railroad and San Francisco Bay, and between South San Francisco and Redwood City; and from constructing, maintaining, or operating the said partly completed railroad track upon any territory in San Mateo county lying east of the present located line of the Bay Shore Highway and between the said highway and the deep water channel of San Francisco Bay and between the cities of South San Francisco and Redwood City, "unless and until there has first been obtained from the Interstate Commerce Commission * * * its certificate that the present or future public convenience or necessity requires or will require the construction of such extension."

On the first appeal, this court was of the opinion that, in the circumstances, the appellee was not "a party in interest," and upon that ground reversed the decree of the trial court. 46 F.(2d) 729. This court expressed no opinion in respect of the second defense, which will be discussed fully hereafter.

The Supreme Court reversed the decree of this court, and remanded the cause here for determination of the question of fact. 284 U. S. 47, 50, 52 S. Ct. 56, 76 L. Ed. 160.

The undisputed facts are as follows:

The appellee is a railroad corporation organized under the laws of California to construct and operate a standard steam railroad from San Francisco southward along the western shore of San Francisco Bay and to Redwood City, in San Mateo county. The proposed line, approximately 25 miles in length, lies eastward of, near, and substantially parallel to a line operated by the appellant. On July 16, 1928, the appellee filed an application with the Interstate Commerce Commission for a certificate that the present and future public convenience and necessity require the construction and operation by the appellee of a railroad line between Quint street, San Francisco, and Redwood City, a distance of 22 miles, and thence easterly and northeasterly about 2 miles to a point at or near the plant of the Pacific Port-

land Cement Company, a total distance of about 25 miles. A definite location was adopted in March, 1929.

The appellant and the South San Francisco Belt Railway intervened in opposition to the application before the Interstate Commerce Commission, and the city of Burlingame, the San Francisco Chamber of Commerce, and other organizations intervened in favor thereof. A hearing was had and an examiner's proposed report recommending that the application be denied was served. Thereafter, on October 18, 1929, the appellee filed an amended application for a certificate for the construction and operation of the line described above and also of an additional line commencing at a point at or near Redwood City, and extending in a general easterly and northeasterly direction about 14 miles, in San Mateo and Alameda counties, Cal., crossing, by a bridge to be constructed, the lower end of San Francisco Bay, to a connection with the main line of the Western Pacific Railroad Company at or near Niles, Alameda county. The total length of line sought to be constructed was about 39 miles. The railroad commission of California and the Peninsula Industrial Conference intervened in support of the application, and the Market Street Railway Company intervened in opposition thereto.

On January 19, 1931, the Interstate Commerce Commission issued a certificate, subject to certain terms and conditions, to the effect that "the present and future public convenience and necessity require the construction and operation" of the appellee's San Francisco-Niles line, as described above. 170 I. C. C. 183, 212–213.

The appellant, a Kentucky corporation, is operating as lessee a railroad line between San Francisco and Redwood City, and beyond, passing through the city of San Mateo. Without having first obtained from the Interstate Commerce Commission a certificate of present or future public convenience and necessity, and without having applied for such certificate, the appellant began the construction of its railroad track on Saturday, March 23, 1929, at about noon. During the rest of the day and during the succeeding day, the appellant proceeded vigorously with the construction of its track, and by Monday morning had laid its track directly across the approximate proposed location and route of the appellee's proposed railroad, in San Mateo, and near its southern city limits. The appellee admits that its resolution of location was adopted after March 23, 1929. The construction of the appellant's track commenced at a point about 2,500 feet east of the appellant's main line railroad, and extended east across the approximate proposed railroad location of the appellee. At the time that the restraining order was issued, the appellant, according to the answer filed by it, had laid about 100 feet of additional track extending from a point approximately 75 feet from its main line, and thence in a general southerly and easterly direction. Until restrained by the above order, the appellant proceeded with the work of extending the new track both east and west, and particularly west, to a connection with its main line.

According to the appellant's "authority for expenditure," as revised the second time, it was "proposed to construct 1,960 feet of track parallel to the main and 8,200 feet of track extending toward [the] bay to serve the [Emma Rose] property for its entire width." The master found that the track laid by the appellant "extended northeasterly about 1,442 feet across said location and across the route of the plaintiff's railroad."

The complaint alleges, and the special master so found, that "the purpose of the Southern Pacific Company was and is to connect said track at its westerly end with the railroad of the Southern Pacific Company and to extend the said railroad at the easterly end northerly and southerly, and approximately parallel with the railroad of the plaintiff."

The appellant's new track, as at present laid, is situated in a 500-acre tract known as the Emma Rose property. It is admitted that "there were no industries located on the property of Emma Rose at the time of the construction of the track in question. * * * *" The master found that "the territory involved in the present proceeding" contains approximately 23,300 acres; that "said territory is new territory which has not heretofore been served by the defendant railroad"; and that "the territory into which said track will extend easterly of the plaintiff's railroad and between plaintiff's railroad and the Bay of San Francisco, and extending from the City of South San Francisco to Redwood City is unoccupied and undeveloped, there being at the present time no industry or settlement which requires railroad service at this time, nor which will, apparently, require railroad service in the immediate future."

Counsel for both parties agreeing, a special master was appointed "to take the testimony and report the findings of fact and con-

clusions of law to the Court." The master's findings and conclusions were later adopted as those of the court, and his report was confirmed.

■ Under such circumstances, the findings of fact of the special master, so far as they depend "upon conflicting testimony, or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, * * * must be treated as unassailable." Davis v. Schwartz, 155 U. S. 631, 636, 15 S. Ct. 237, 239, 39 L. Ed. 289.

In the last cited case, at page 637 of 155 U. S., 15 S. Ct. 237, 239, the Supreme Court further said:

"The question of the conclusiveness of findings by a master in chancery under a similar order was directly passed upon in Kimberly v. Arms, 129 U. S. 512, 9 S. Ct. 355 [32 L. Ed. 764], in which a distinction is drawn between the findings of a master under the usual order to take and report testimony, and his findings when the case is referred to him by consent of parties, as in this case. While it was held that the court could not, of its motion, or upon the request of one party, abdicate its duty to determine by its own judgment the controversy presented, and devolve that duty upon any of its officers, yet, where the parties select and agree upon a special tribunal for the settlement of their controversy, there is no reason why the decision of such tribunal, with respect to the facts, should be treated as of less weight than that of the court itself, where the parties expressly waive a jury, or the law declares that the appellate court shall act upon the finding of a subordinate court.

" 'Its findings,' said the court, 'like those of an independent tribunal, are to be taken as presumptively correct, subject, indeed, to be reviewed, under the reservation contained in the consent and order of the court, when there has been manifest error in the consideration given to the evidence, or in the application of the law, but not otherwise.' "

See, also, Ladd & Tilton Bank v. Boyle (C. C. A. 9) 299 F. 56, 57.

The special master in the instant case was William H. Hunt, a distinguished member of the bar and a former member of this court. The thoroughness with which he discharged his duties is indicated by the closing paragraph of the "agreed condensed statement of evidence": "At the conclusion of the introduction of evidence before the master, and pursuant to arrangements between counsel for the respective parties, the master personally examined the 1400 feet of track, more or less, referred to in the record, the Emma Rose property and the other property in and about San Mateo, including the constructed portion and the projection across the Emma Rose property of the Bay Shore highway, and the projected line of the plaintiff across the Emma Rose property and from the San Francisco Bay Toll Bridge Highway and from the San Francisco Bay Toll Bridge viewed the property lying along the shore of San Francisco Bay in that vicinity."

As is stated in the appellant's brief, "the fundamental issue which this Court is called upon to determine is whether the track, which appellant has undertaken to construct from its main line of railroad onto a tract of land immediately adjacent thereto, is an extension of its main line of railroad, within the provisions of paragraph (18) of Section 1 of the Interstate Commerce Act, 49 USCA § 1 (18, 22), or whether this track is an industrial spur or switching track excepted from the provisions of paragraph (18) by paragraph (22) of Section 1 of the act."

The two paragraphs referred to are as follows:

Par. 18: "No carrier by railroad subject to this chapter shall undertake the extension of its line of railroad, or the construction of a new line of railroad, or shall acquire or operate any line of railroad, or extension thereof, or shall engage in transportation under this chapter over or by means of such additional or extended line of railroad, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad, and no carrier by railroad subject to this chapter shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity permit of such abandonment."

Par. 22: "The authority of the commission conferred by paragraphs (18) to (21), both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching, or side tracks, located or to be located wholly within one State, or of street, suburban, or interurban electric railways, which are not operated as a part or parts of a general steam railroad system of transportation."

The problem, then, resolves itself into one of the classification: Is the track in question an extension or an industrial spur?

In determining the proper classification, we must be guided by the exposition and the definition of terms by the Supreme Court, in the leading case of Texas & Pacific Railway Co. v. Gulf, Colorado & Santa Fe Railway Co., 270 U. S. 266, 277, 278, 46 S. Ct. 263, 266, 70 L. Ed. 578:

"A truer guide to the meaning of the terms 'extension' and 'industrial track,' as used in paragraphs 18 to 22 [49 USCA § 1 (18 to 22)], is furnished by the context and by the relation of the specific provisions here in question to the railroad policy introduced by Transportation Act of 1920. By that measure, Congress undertook to develop and maintain, for the people of the United States, an adequate railway system. It recognized that preservation of the earning capacity, and conservation of the financial resources, of individual carriers, is a matter of national concern; that the property employed must be permitted to earn a reasonable return; that the building of unnecessary lines involves a waste of resources, and that the burden of this waste may fall upon the public; that competition between carriers may result in harm to the public, as well as in benefit; *and that, when a railroad inflicts injury upon its rival, it may be the public which ultimately bears the loss.* [Cases cited.] The act sought, among other things, to avert such losses.

"When the clauses in paragraphs 18 to 22 are read in the light of this congressional policy, the meaning and scope of the terms 'extension' and 'industrial track' become clear. The carrier was authorized by Congress to construct, without authority from the Commission, 'spur, industrial, team, switching or side tracks * * * to be located wholly within one state.' Tracks of that character are commonly constructed, either to improve the facilities required by shippers already served by the carrier or to supply the facilities to others, who being within the same territory and similarly situated are entitled to like service from the carrier. The question whether the construction should be allowed or compelled depends largely upon local conditions, which the state regulating body is peculiarly fitted to appreciate. Moreover, the expenditure involved is ordinarily small. But where the proposed trackage extends into territory not theretofore served by the carrier, and particularly where it extends into territory already served by another carrier, its purpose and effect are, under the new policy of Congress, of national concern. For invasion through new construction of territory adequately served by another carrier, like the establishment of excessively low rates in order to secure traffic enjoyed by another, may be inimical to the national interest. If the purpose and effect of the new trackage is to extend substantially the line of a carrier into new territory, the proposed trackage constitutes an extension of the railroad, within the meaning of paragraph 18, although the line be short, and although the character of the service contemplated be that commonly rendered to industries by means of spurs or industrial tracks." (Italics our own.)

The complaint contains the following material allegation: "That, as the plaintiff is informed and believes and therefore alleges; the purposes of the defendant Southern Pacific Company in building said track and extending the same, are solely to annoy, harass, impede and, if possible, prevent the construction and operation by the plaintiff of its said proposed railroad by impeding and, if possible, preventing the construction and operation of the same across said track and by extending its said railroad by means of said track in advance of the railroad of the plaintiff into the territory above referred to lying between the plaintiff's proposed railroad and the Bay of San Francisco."

The special master found the defendant-appellant's purpose to be as set forth above.

Accordingly, the Texas & Pacific Case squarely applies to the present controversy.

Furthermore, it is admitted that "there were no industries located on the property of Emma Rose at the time of the beginning of the construction of the track in question," and that "the territory easterly of the plaintiff's proposed railroad and between it and the Bay of San Francisco and extending from said City of South San Francisco to Redwood City is almost entirely unoccupied and undeveloped and has at present no industry or settlement or anything requiring railroad service now or in the immediate future." In our opinion, such a state of facts does not indicate a need for the construction of spur tracks, as expounded by the Supreme Court in the Texas & Pacific Case, supra.

Nor does the mere fact that the industrial agent of the appellant "came to the conclusion * * * that about the only way we would get industries started in San Mateo was to put a switch track down there," or that certain civic interests in San Mateo

736

wanted such a spur track built, serve to deprive the Interstate Commerce Commission of the United States of the opportunity of passing upon the necessity and desirability of new construction across "cow pasture," in the language of W. H. Kirkbride, the appellant's own engineer of maintenance of way and structures of its Pacific System.

Particularly is this true when the intention of the appellant "was to impede and prevent" the appellee's "proposed construction and operation," as found by the master.

We note the appellant's suggestion that the injunction, if any is granted, should be limited "so as to enjoin appellant only from constructing any railroad track into the territory lying easterly and/or northerly of the southwesterly boundary of the San Francisco Bay Toll Bridge right of way and/or southerly and/or northerly of the boundaries of the property owned by said Emma Rose."

In view, however, of the evidence and the master's findings, we feel compelled to hold that the track in controversy is an extension and not an industrial spur; and that, since it is an extension, there is required as authorization for it a certificate of convenience and necessity from the Interstate Commerce Commission.

Our decision does not prejudice the appellant's right to proceed with this construction, should the proper agency for the determination of the question—namely, the commission—find that the proposed track is in fact required by "the present or future public convenience and necessity." We simply are not prepared, under the facts and the law of this case, to deprive the commission of the opportunity of passing upon the existence of a state of facts, the determination of which is one of its statutory duties.

Accordingly, the decree is affirmed.