## MISSOURI PAC. R. CO. v. ST. LOUIS SOUTHWESTERN RY. CO.
### No. 9870.

Circuit Court of Appeals, Eighth Circuit.

Oct. 10, 1934.

Edward J. White, of St. Louis, Mo., and Robert E. Wiley, of Little Rock, Ark., for appellant.

Adair Dyer, of Dallas, Tex. (A. H. Kiskaddon, of St. Louis, Mo., and N. F. Lamb, of Jonesboro, Ark., on the brief), for appellee.

Before SANBORN and WOODROUGH, Circuit Judges, and DEWEY, District Judge.

DEWEY, District Judge.

Appeal from a decree of the United States District Court for the Eastern District of Arkansas granting an injunction restraining the appellant from constructing a certain railroad track until it shall have applied for and obtained from the Interstate Commerce Commission a certificate that the present or future public convenience and necessity require the construction of said proposed track.

Appellant and appellee are railway corporations engaged in interstate commerce. The lines of railroad of both parties pass through North Little Rock in Arkansas. In the eastern part of said municipality are located two important industrial plants; the Dixie Cotton Oil Mill and the Arkansas Power & Light Company. A large amount of freight is handled in interstate commerce every year in the operation of these industries, especially for the Dixie Mill. Both of said plants are served directly by two lines of railroad; the appellee and the Chicago, Rock Island & Pacific Railway Company. The appellant also moves a large amount of freight for these industries, particularly the Dixie Mill, but such freight has to be handled over the lines of one of the other roads; that is, it is carried over the side tracks or spurs of one of the other roads to or from appellant's main line. Appellant pays for this service. The appellant has no other connection with said industries. It is the plan and purpose of the appellant to construct a line of track from its main line to said plants so as to enable it to serve said plants directly. In order to construct such a track it will be necessary for the appellant to cross the tracks of the appellee which lie between appellant's main line and said plants. Said line, if constructed, would be approximately 5,100 feet in length, and the approximate cost of construction would be $25,000, exclusive of right of way.

Paragraph 18 of section 1 of the Interstate Commerce Act (24 Stat. 379, chap. 104, as amended by Transportation Act of 1920, 41 Stat. 456, chap. 91, U. S. C., title 49, § 1 (18), 49 USCA § 1 (18) is as follows: "Extension or abandonment of lines; certificate required. No carrier by railroad subject to this chapter shall undertake the extension of its line of railroad, or the construction of a new line of railroad, or shall acquire or operate any line of railroad, or extension thereof, or shall engage in transportation under this chapter over or by means of such additional or extended line of railroad, unless and until there shall first have been

obtained from the commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad, and no carrier by railroad subject to this chapter shall abandon all or any portion of a line of railroad, or the operation thereof, unless and.until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity permit of such abandonment."

Paragraph 22 of said act (section 1 (22), 49 USCA § 1 (22) is as follows: "Construction, etc., of spurs, switches, etc., within State. The authority of the commission conferred by paragraphs (18) to (21), both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching, or side tracks, located or to be located wholly within one State, or of street, suburban, or interurban electric railways, which are not operated as a part or parts of a general steam railroad system of transportation."

The question for our determination is whether the proposed construction comes under the provisions of said paragraph 18 or under paragraph 22. In other words, is the proposed construction an extension of appellant's line of railroad within the contemplation of said paragraph 18, or is it the building of spur, industrial, team, switching, or side tracks, and hence under the provisions of paragraph 22?

We are not without a guide in the construction to be placed on these two paragraphs of the Interstate Commerce Act. In Texas & Pac. R. R. Co. v. Gulf, C. & S. F. R. Co., 270 U. S. 266, 46 S. Ct. 263, 266, 70 L. Ed. 578, the Supreme Court of the United States had these two paragraphs under consideration. In regard thereto the Supreme Court said: "When the clauses in paragraphs 18 to 22 are read in the light of this congressional policy, the meaning and scope of the terms 'extension' and 'industrial track' become clear. The carrier was authorized by Congress to construct, without authority from the Commission, 'spur, industrial, team, switching or side tracks * * * to be located wholly within one state.' Tracks of that character are commonly constructed, either to improve the facilities required by shippers already served by the carrier or to supply the facilities to others, who being within the same territory and similarly situated are entitled to like service from the carrier. The ques-

tion whether the construction should be allowed or compelled depends largely upon local conditions, which the state regulating body is peculiarly fitted to appreciate. Moreover, the expenditure involved is ordinarily small. But where the proposed trackage extends into territory not theretofore served by the carrier, and particularly where it extends into territory already served by another carrier, its purpose and effect are, under the new policy of Congress, of national concern. For invasion through new construction of territory adequately served by another carrier, like the establishment of excessively low rates in order to secure traffic enjoyed by another, may be inimical to the national interest. If the purpose and effect of the new trackage is to extend substantially the line of a carrier into new territory, the proposed trackage constitutes an extension of the railroad, within the meaning of paragraph 18, although the line be short, and although the character of the service contemplated be that commonly rendered to industries by means of spurs or industrial tracks. Being an extension, it cannot be built unless the federal Commission issues its certificate that public necessity and convenience require its construction."

In the case at bar we find a situation where the industries in question are amply and adequately serviced by the two railroads now connected therewith. The proposed line would invade a territory now adequately occupied by other lines of railroad and in which the appellant now has no trackage whatever. The proposed line would branch off from appellant's main line about 4,350 feet north of appellee's right of way, and extend to said right of way and thence parallel therewith about 700 feet to the Dixie Cotton Oil Mill. There are no industries to be served along this proposed line between appellant's main line and the plants of the Dixie Mill and the power company. If industries may be located in that vicinity in the future, it appears that they can be adequately served by the two lines that now occupy the territory. Under the record it clearly appears that the purpose and effect of the proposed new trackage is to extend substantially the line of the appellant into new territory which is already adequately served not only for the present, but for any reasonable needs that can be anticipated.

Following the rule of the Supreme Court, which is particularly applicable to the facts of this case, but one conclusion can be reached, and that is that the proposed extension, nearly a mile in length, into territory in which appellant has no trackage, and which

territory is now and for the future will be adequately served by other carriers, is an "extension" of appellant's railroad within the contemplation of paragraph 18 of section 1 of the Interstate Commerce Act, and the same cannot be constructed without the consent of the Interstate Commerce Commission.

As bearing on the question, see Missouri Pacific Ry. Co. v. Chicago, R. I. & P. Ry. Co., 41 F.(2d) 188 (8 C. C. A.); El Dorado & W. Ry. Co. v. Chicago, R. I. & P. Ry. Co., 5 F.(2d) 777 (8 C. C. A.); Missouri-Kansas-Texas Ry. Co. v. Northern Okla. Rys., 25 F. (2d) 689 (8 C. C. A.).

The injunctive order of the trial court was correct, and should be, and is, affirmed. It is so ordered.

Affirmed.