## MISSOURI, K. & T. R. CO. OF TEXAS v. TEXAS & N. O. R. CO.

### No. 12305.

United States Court of Appeals
Fifth Circuit.

Feb. 24, 1949.

G. H. Penland and M. E. Clinton, both of Dallas, Tex., and C. E. Bryson, of Houston, Tex., for appellant.

Tom M. Davis, of Houston, Tex., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The controversy is between two railroad corporations of the State of Texas, each operating by different routes a line from Houston to Fort Worth, and other lines within the State, with connections in other States, and engaged in interstate commerce

---

and subject to the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. It arises under Section 1, Pars. (18) and (20) of the Act on the subject of extension of lines. The appellant M. K. and T. R. R. Co., sought an injunction to stay the appellee Texas and New Orleans R. R. Co., from building certain tracks in the edge of the City of Houston without a certificate of public convenience and necessity from the Interstate Commerce Commission, asserting that the tracks were an extension of appellee's line of railroad under paragraphs (18) and (20). Appellee denied that they were such, alleged that they were spurs and industrial tracks wholly within the State of Texas, not within the authority of the Commission under Paragraph (22); and if they were within Paragraph (18) appellant had built similar tracks nearby and was about to build others and operate them, also without a certificate from the Commission, and injunction was sought by cross-bill to stay the construction and operation of these. There were some minor contentions about rights of way.

The District Court held that none of the tracks, either new or old (one of which had been built and operated for fifteen years), were extensions, but all were spur and industrial tracks, for which no certificate had ever been sought and for which none was required. Injunctions were denied, and the right of way disputes adjusted. This appeal relates only to the question of the necessity for a certificate for the new tracks of the Texas and New Orleans.

Paragraph (18) forbids a carrier to "undertake the extension of its line of railroad" without a certificate from the Commission. Paragraph (20) provides that any construction or operation contrary to paragraph (18) may be enjoined at the "suit of the United States, the Commission, any commission or regulating body of the State or States affected, or any party in interest." Paragraph (22) says: "The authority of the commission conferred by paragraphs (18) to (21), both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching or side tracks, located or to be located wholly within one State." The "extension of [a] line of railroad" and the building of the minor tracks named are thus put in contrast, but without definition. According to Webster's New International Dictionary, "extension" means "a stretching out, an enlargement in breadth, or continuation of length". Any additional track might be a forbiddden extension if added to the "line of railroad". A "spur track" is defined as a "short branch line of track; especially a side track connected with its main line by a single switch"; and a "side track" is "a short track connected by switches at one or more points with the main track". Though not defined by the dictionary, a team track is well known to be one on which cars are placed to be loaded or unloaded by wagons, and now more frequently by trucks; and an industrial track is a spur or side track built to a factory or warehouse or other industry to handle its freight in carload lots. They all are in contrast to the main line and are a part of terminal facilities. Looking to the words alone, it would seem that Congress intended that the Commission should be called into action only if a main line was to be extended to another terminal point, or was to be abandoned, for the paragraphs apply equally to extensions and abandonments. But in the case of Texas & Pacific Ry. Co. v. Gulf, Colorado & Santa Fe Ry. Co., 270 U.S. 266, 46 S.Ct. 263, 266, 70 L.Ed. 578, the Supreme Court, looking to the broad aims of Congress, held that the purpose and effect of the new trackage should be considered; and although it was to serve industries only and proposed to set up no new terminus for the railroad, yet if it "extend[ed] substantially the line of a carrier into new territory, the proposed trackage constitutes an extension of the railroad, within the meaning of paragraph 18." In that case the new trackage was to go from a station on the main line of the Santa Fe railroad for seven and a half miles, besides spurs, sidings and other subsidiary tracks, and to cost $510,000. It was to serve no industry on the way, but was to reach an "industrial district" extending 2½ miles along the tracks of the Texas and Pacific, to the vicinity of which no track of the Santa Fe had ever reached. It was estimated that $500,000 per year in freight traffic theretofore adequately

handled by the Texas and Pacific would be diverted to the Santa Fe. The court held that the new trackage would be clearly an extension within the above quoted rule.

 The case here is radically different. The appellee, referred to as the Texas and New Orleans, built its main line into Houston first by many years. In 1892 appellant, referred to as the M. K. and T., built its main line, crossing that of Texas and New Orleans about five miles from the center of the then not large city, at Eureka Junction, now within the city limits. About fifteen years ago the M. K. and T. built a spur track from a point near the Junction about a half mile long northwestward, but not along its own line, but paralleling that of the Texas and New Orleans and about four hundred feet from it with Highway No. 290 between the two tracks. This spur was used at first as a "tail track" or yard track. Later it was used to some extent as a "team track". Then two or three industries were served by spurs from it. Several industries were also served by spurs from the M. K. and T. main line eastward from the Junction. Except for these industries, which were not large ones, the land in the obtuse angle northeast of the crossing made by the two main lines was and still is virgin prairie. About 1947 the City of Houston paved a street known as Eleventh Street which passed at the end of the M. K. and T. original spur track into this area for its development. The M. K. and T. built across Eleventh Street and further paralleled the Texas and New Orleans for a quarter of a mile; and the Texas and New Orleans, securing proper permits, crossed Highway 290 with proper safety devices, and built across the new part of M. K. and T.'s spur track, and is proposing to build its spur on across lands and on rights of way owned by it to reach and serve three or four industries about to be established, and then to turn southward and cross Eleventh Street, and thence eastward about 1,300 feet from the M. K. and T. main line especially to serve the Bute Industry, which is about to establish a factory there and has sought service for it from Texas and New Orleans, which now serves its warehouse in Houston. This proposed trackage is about 5,000 feet long and will cost $30,000 to $40,000. It may take some traffic from an industry now reached by the M. K. and T. spur, but the revenue is inconsiderable. The M. K. and T. for several years past has followed a policy of building a track and then inviting an industry to come to it. The Texas and New Orleans has invited industries, less aggressively, and having secured them now wishes to build promised tracks to them. Both railroad companies, directly or through an affiliate, have bought lands in the area. Both think that this space of perhaps two square miles, still shown by aerial photographs to be prairie land, except as above indicated, has a bright industrial future. Each wishes a share in the anticipated traffic, and each charges the other with trying to "box it in" by paralleling the main line of the other. Neither has hitherto thought the new tracks required a certificate from the Commission. Neither the Commission nor any other public authority has sought to interfere.

We do not think this case is like that of the Texas & Pacific Ry. Co. v. Gulf, Colorado & Santa Fe Ry. Co., supra; or involves an "extension of [the] line of railroad" of either contestant. The obtuse angle of prairie land was originally bounded as much by the main line of the one as by the other. Each had a right to build spur tracks and industrial tracks from its main line into it. M. K. and T. built the first ones, and its longer one strategically paralleled the Texas and New Orleans. But neither that nor its other spurs preempted for the M. K. and T. the hinterland, still undeveloped but in easy reach of both railroads. Texas law permits the Texas and New Orleans to cross the highway as it has done, and to cross the extension of M. K. and T.'s spur as it has done, conceding the dispute about right of way to M. K. and T. as the District Court decided. There is plenty of room and opportunity for both railroads to serve. There is no serious raiding of any established traffic. The proposed expenditures are not unusual or very significant for these strong and extensive railroads to make. We see no need to strain to hold these tracks which are in form and in purpose and effect ordinary industrial tracks to be

"extensions of the lines of railroads" of these two great carriers, which must be authorized by the Railroad Commission. We make no enquiry into any question of public convenience or necessity, which is not a function of the court, but rest the decision upon the grounds stated.

Judgment affirmed.