Mrs. Winifred R. GILMORE, J. B. Wall, and Mrs. Mary H. Rawlings

v.

SANDERSVILLE RAILROAD COMPANY and The Georgia Public Service Commission.

Civ. A. 1184.

United States District Court
M. D. Georgia, Macon Division.

Feb. 3, 1955.

Newell Edenfield, Lamar Sizemore, Atlanta, Ga., Spence M. Grayson, Savannah, Ga., Edward T. Averett, Sandersville, Ga., for plaintiff.

B. D. Murphy, Atlanta, Ga., John B. Harris, Jr., Macon, Ga., W. C. McMillan, D. E. McMaster, Sandersville, Ga., for defendant.

Dudley Cook, Atlanta, Ga., for Ga. Public Service Comm.

BOOTLE, District Judge.

This case was heard on February 1, 1955, and is now for decision upon application for a preliminary injunction.

The complaint of Mrs. Winifred R. Gilmore, J. B. Wall, and Mrs. Mary H. Rawlings against Sandersville Railroad Company, hereinafter called Railroad, and the Georgia Public Service Commission, hereinafter called Commission, makes the following case: The Railroad is a common carrier engaged in transporting interstate commerce and is subject to the Commerce Act of 1920, 49 U.S.C.A. § 1(18). On July 19, 1954, it filed with the Commission an application to be permitted to condemn certain property, including certain properties of the three Plaintiffs, for the purpose of building a purported spur track from the terminus of its present line at Sandersville, Georgia, to a proposed new kaolin refining plant to be located upon "The

Griner Place" approximately six miles in a northwesterly direction from Sandersville.

The Commission held a hearing and on December 20, 1954, granted the permission requested. A petition for rehearing was overruled by the Commission on January 13, 1955.

The Plaintiff Mrs. Gilmore owns approximately 1,182 acres of land north of and adjacent to the city limits of Sandersville, including about 250 acres within the city limits of Sandersville, which lands are suitable for residential development. The other two Plaintiffs own lands adjoining that of Mrs. Gilmore.

The Railroad's present line is approximately three miles in length extending from Tennille, Georgia, on the Central of Georgia Railroad, in a northerly direction to Sandersville.

The proposed new trackage will extend approximately six miles in a generally northwesterly direction from Sandersville into "virgin territory" now having no railroad facilities.

The Railroad intends to serve with the new trackage not only the proposed new kaolin plant but the general public as well, including the little town of Deepstep presently without railroad facilities, which is approximately six miles in a northwesterly direction from the proposed terminus of the new trackage, and intends to serve also any and all new industries which may be attracted by the new trackage. The Railroad intends to install plant tracks and sidings to take care of loading and unloading in connection with the new trackage.

The Railroad has instituted condemnation proceedings against the Plaintiffs and has notified them, in accordance with the requirements of the Georgia law, that with respect to each of the Plaintiffs it has appointed its assessor and "hereby notifies you to select your assessor, said assessors to select a third assessor, all as provided by law. In the event you do not select an assessor, Sandersville Railroad Company will without further notice petition the Ordinary, pursuant to Georgia Code Section 36–401, for the selection; and in the event the two assessors do not within five days select a third assessor, Sandersville Railroad Company will, pursuant to Georgia Code Section 36–402, petition a judge of the superior court of the State of Georgia for a third assessor." The Plaintiffs Mrs. Gilmore and Mr. Wall have been notified that the assessors will meet on the premises on the 3d day of February, 1955 at three o'clock p. m. as to J. B. Wall and at 10:00 a. m. as to Mrs. Gilmore. The record is not entirely clear as to whether they will meet in the case of Mrs. Mary H. Rawlings on February 3d or February 4th.

The cost of the new trackage will be approximately $181,000 or maybe $205,000.

The Court finds the facts to be as above alleged and finds also that the Railroad's total investment in transportation property less recorded depreciation and amortization, according to reports filed with the Commission, was as of the year ended December 31, 1953, $102,814, which amount has been increased since then by approximately $100,000, representing the cost of a new diesel engine.

■ Other pertinent allegations of the complaint are that Mrs. Gilmore's property is worth $75,000 but, if traversed by the proposed trackage, will be worth only $37,500; that the proposed trackage will cause diminution in value of the property of the other two Plaintiffs in excess of $3,000, exclusive of interest and cost as to each Plaintiff; that the alleged "spur track" is in truth and in fact not a spur track but constitutes an extension of the line of the Railroad, requiring a certificate of convenience and necessity from the Interstate Commerce Commission, pursuant to Section 1, subparagraph 18 of the Transportation Act of 1920, 49 U.S.C.A. § 1(18); that the Railroad acquired no valid permit from the Commission to construct said extension, such permission being beyond the jurisdiction of the Commission, and that, without a certificate from the Interstate

Commerce Commission, the Railroad has no legal authority to condemn Plaintiffs' lands; that it conclusively appeared from the hearing before the Commission that no necessity exists for the condemnation of Plaintiffs' properties, it appearing from said hearing and without dispute that the patron for whose benefit the alleged spur is to be constructed already owns in fee simple a right of way connecting with another railroad.

The Court finds as a fact that no certificate of convenience and necessity has been issued by the Interstate Commerce Commission, although the President of the Railroad talked more or less informally with Mr. Mahafee, Chairman of one of the divisions of the Interstate Commerce Commission, and was advised by Mr. Mahafee to the effect that, in his opinion, no certificate from the Interstate Commerce Commission was required.

With reference to the other right of way claimed to be owned by the patron, there is evidence to the effect that it lacks six miles being complete and that the cost of a roadbed over that right of way would be prohibitive.

The Railroad has not as yet filed its pleadings, but the Commission appeared specially objecting to the jurisdiction of this Court and to the venue and filed a written motion to dismiss the suit for lack of jurisdiction and a written motion to strike the entry of service. The Commission also filed an answer.

On this hearing evidence was introduced, both oral and documentary, including a transcript of the testimony before the Commission, two of the above mentioned notices in the condemnation proceedings, the orders of the Commission, certified copy of the charter of the Railroad, an affidavit from Mr. E. J. Grassmann, and three plats of the proposed new trackage, one of which shows also the present line. A comparatively small plat showing a bird's-eye view of a large territory is dated May 26, 1954, and contains this legend, "Sandersville Railroad Company, Sandersville, Georgia, Plan of Proposed Extension of the Sandersville Railroad." The other two plats being much larger and more detailed, each contain this legend, "Sandersville Railroad Company, Sandersville, Georgia, Plan of Proposed Extension of the Sandersville Railroad, May 17, 1954, revised June 29, 1954."

The best estimates under the evidence are that the proposed new plant will produce 20 to 25 cars a day, weighing 42 tons each, or a total of 1,200 tons per day. The new diesel engine will haul as much as 2,500 tons. The Railroad hauls from Sandersville to Tennille from one car to as many cars as it can corral. Sometimes they run with one car. If the new plant is constructed and the new trackage built and if the railroad got a full load from the new plant, there would be no necessity for the train to stop at Sandersville for any switching or other purpose other than to bill it out.

There is some evidence to the effect that this new business might mean as much as $900 per day gross or about $450 per day net to the Railroad.

The Railroad does not plan to have any new depots, freight points, or billing points on the new trackage, nor does it plan to make any extra charge for hauling the kaolin this extra six-mile distance, being content with its regular freight charges from Sandersville to Tennille.

The Court finds as a fact that this proposed new trackage, if constructed, would be an extension of the line of the railroad of Sandersville Railroad Company and the construction of a new line of railroad by Sandersville Railroad Company within the meaning of Title 49, Section 1, paragraph 18 of the United States Code, and that said proposed new trackage, if constructed, would not be a spur, industrial, team, switching, or side track within the meaning of Title 49, Section 1, paragraph 22 of the United States Code.

The Court makes, arrives at, and sets forth the following conclusions of law:

This Court has jurisdiction of this cause of action. 28 U.S.C. §§ 90(b)

(2), 1392(a), 1331; 49 U.S.C.A. § 1(18); 28 U.S.C. § 1337.

■ This proposed new trackage, if constructed. would constitute an extension of the line of railroad of Sandersville Railroad Company and would constitute a new line of railroad of said Company and would not constitute a spur, industrial, team, switching, or side track. 49 U.S.C.A. § 1, paragraph 18 and paragraph 22. Detroit & M. Ry. Co. v. Boyne City G. & A. R. Co., D.C., 286 F. 540. Texas & Pacific Ry. Co. v. Gulf, Colorado & Santa Fe Ry. Co., 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578. Chicago, Milwaukee, St. P. & P. R. Co. v. Northern Pacific R. Co., D.C., 120 F. Supp. 710. Missouri K. & T. R. Co. of Texas v. Texas & N. O. R. Co., 5 Cir., 172 F.2d 768. Union Pacific R. Co. v. Denver & Rio Grande Western R. Co., 10 Cir., 198 F.2d 854. L. Singer & Sons v. Union Pacific R. Co., 311 U.S. 295, 61 S.Ct. 254, 85 L.Ed. 198, 199.

■ Under the statutes, this Court has no concern with and no right to consider whether public convenience and necessity require or would be furthered by the proposed track and any factors bearing on convenience or necessity of the public are irrelevant to the question that is involved in this case. Chicago, Milwaukee, St. P. & P. R. Co. v. Northern Pacific R. Co., D.C., 120 F.Supp. 710.

■ Each of the Plaintiffs is a party in interest within the meaning of Title 49, Section 1, paragraph 20, United States Code, and is entitled to maintain this action. Detroit & M. Ry. Co. v. Boyne City G. & A. R. Co., D.C., 286 F. 540. L. Singer & Sons v. Union Pacific R. Co., 311 U.S. 295, 61 S.Ct. 254, 85 L. Ed. 198.

Plaintiffs are entitled to a preliminary injunction as prayed in their complaint as amended, and a preliminary injunction should issue.

Whereupon it is considered, ordered, adjudged, and decreed by the Court as follows:

1

Until further order of this Court, the Defendant Sandersville Railroad Company, its servants, agents, and employees, including the assessor Alex Davidoff named in the condemnation proceedings against Mrs. Winifred R. Gilmore and J. B. Wall, and whoever is named as assessor in the condemnation proceeding against Mrs. Mary H. Rawlings, are hereby enjoined from proceeding with any condemnation of the Plaintiffs' properties and from undertaking the proposed extension of its lines or from constructing or operating a new line of railroad over the Plaintiffs' properties or from acquiring Plaintiffs' properties for such purpose and without limiting the generality of the foregoing, they are enjoined specifically from taking any further steps in connection with said condemnation proceedings relating to lands or properties of Plaintiffs, unless and until a certificate of convenience and necessity is granted by the Interstate Commerce Commission authorizing extension of its lines pursuant to section 1(18) of the Transportation Act of 1920.

2

This order shall not become effective until a bond in the sum of $5,000 has been executed by Plaintiffs, payable to Sandersville Railroad Company, conditioned to pay such costs and damages as may be incurred or suffered by Sandersville Railroad Company as a result of the issuance of this order should it be finally determined that Plaintiffs are not entitled to the relief sought. This bond must be approved by the Clerk of this Court. The Court retains jurisdiction for the purpose of adjusting the amount of the bond upon a showing, after notice to the opposite party, that said bond is excessive or inadequate.