The DETROIT AND TOLEDO SHORE LINE RAILROAD COMPANY, Appellant,

v.

The NEW YORK CENTRAL RAILROAD COMPANY and The Michigan Central Railroad Company, Appellees.

No. 12597.

United States Court of Appeals Sixth Circuit.

April 30, 1956.

William H. Black, Toledo, Ohio, Williams, Eversman & Black, Toledo, Ohio, on brief, for appellant.

George H. Wyatt, Detroit, Mich., Grey K. Nelson, Detroit, Mich., on brief, for appellees.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

The principal questions presented in this appeal are:

1. Was the track built in 1954 by appellee New York Central Railroad Company in Brownstown Township, Wayne County, Michigan, to cross appellant's right of way, a spur or an extension within the purview of 49 U.S.C. § 1, pars. (21) and (22), 49 U.S.C.A. § 1 (21, 22)?

2. Was a contract entered into on June 25, 1901, between appellant and appellees' predecessor Toledo, Canada, Southern and Detroit Railway Company, hereinafter called "Toledo Company," invalid and unenforceable on the ground that it was against public policy? The District Court after hearing on the merits decided both questions in favor of appellees and dismissed the complaint.

The facts as found by the District Court and shown by substantial evidence in the record are in brief as follows:

Appellant, incorporated in 1898 for the purpose of building a steam or electric railroad, secured from the Michigan Board of Railroad Crossings approval of two routes, one in 1899 and one in 1901. The second route being different in location from the first, appellant contracted with the Toledo Company for the purchase of a piece of land belonging to the Toledo Company and for the right to cross both arms of the Toledo Company's "Y" at Slocum Junction. For these and other considerations appellant granted to the Toledo Company the right

> "at any time or times hereafter, to cross with spur tracks any portion of said Shore Line Company's tracks and right of way between Trenton and Toledo, without cost or payment of compensation therefor * * *."

The purpose of this agreement, the benefit of which ran to each of the parties' successors and assigns, was to permit the Toledo Company to reach the territory east of appellant's line within the area south of Trenton, Michigan, and in the neighborhood of Detroit, Michigan.

During the period in controversy both appellant and appellees served certain industrial interests south of Trenton one or two miles, including The Detroit Edison, The Monsanto Chemical Company, and Chrysler-Cycleweld. Both appellant and appellees had certain exclusive customers along their respective lines in the area. Recently The McLouth Steel Company, which owns some 900 acres in the "Denby Tract" south of Trenton in the same area as the industries above named, requested both appellant and appellee New York Central to give a spur connection but appellant refused to join with appellees in any such arrangement. Appellant has never had a track leading into The McLouth Steel Company property. Appellees notified appellant of their intention to cross appellant's tracks at a point previously approved as to location by the Michigan Public Service Commission. Thereupon this action was instituted, praying for a temporary and permanent injunction against the construction of appellees' proposed track and crossing, and also for a declaratory judgment to the effect that the contract of June 25, 1901, was against public policy and void. The temporary injunction being refused, both by the District Court in Toledo and the District Court in Detroit, appellees' track and crossing have now been built approximately two-thirds of a mile from the Monsanto crossing.

■ Appellant claims that the judgment of the District Court constitutes reversible error under the decision of the Supreme Court in Texas & Pacific Railway Company v. Gulf, Colorado & Santa Fe Railway Company, 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578. Its principal contention is that the District Court made a finding clearly erroneous and contrary to law in determining that the 1,300 feet of track built by appellees constitutes a spur rather than an extension. In case of an extension, under 49 U.S.C. § 1(18), 49 U.S.C.A. § 1(18), application must be made to the Interstate Commerce Commission to issue a certificate of public convenience and necessity. The District Court held that this was unnecessary in the instant case because the track was a spur and was thus exempted from the jurisdiction of the Interstate Commerce Commission under Section 1 (22), which authorizes the carrier to construct without authority from the Commission "spur, industrial, team, switching, or side tracks, * * * to be located wholly within one State * *."

This track was clearly within one state and it falls within the general rule stated by Mr. Justice Brandeis in the Texas & Pacific case, supra, 270 U.S. at page 278, 46 S.Ct. at page 266 as follows:

> "Tracks of that character [spur and industrial tracks] are commonly constructed, either to improve the facilities required by shippers already served by the carrier or to supply the facilities to others, who being within the same territory and similarly situated are entitled to like service from the carrier. The ques-

-tion whether the construction should be allowed or compelled depends largely upon local conditions, which the state regulating body is peculiarly fitted to appreciate. Moreover, the expenditure involved is ordinarily small."

Appellant relies upon the succeeding declaration made by the court as follows:

"But where the proposed trackage extends into territory not theretofore served by the carrier, and particularly where it extends into territory already served by another carrier, its purpose and effect are, under the new policy of Congress, of national concern. For invasion through new construction of territory adequately served by another carrier, like the establishment of excessively low rates in order to secure traffic enjoyed by another, may be inimical to the national interest. If the purpose and effect of the new trackage is to extend substantially the line of a carrier into new territory, the proposed trackage constitutes an extension of the railroad, within the meaning of paragraph 18, although the line be short, and although the character of the service contemplated be that commonly rendered to industries by means of spurs or industrial tracks."

The 7½ mile track proposed to be constructed by the Santa Fe was held to be an extension. It is to be noted that the Texas & Pacific case, supra, states a general rule, an exception to the rule, and then holds that the decision of the case is governed by the exception. Here the District Court found, and the record clearly shows, that the case falls within the general rule. As found by the District Court:

"For more than fifty (50) years the industries east of the plaintiff's railroad in the approximately eight mile distance from just north of Monroe to Trenton have been served by the defendants, or their predecessors, if they had rail connections.

"There is no evidence in this case that the defendants have constructed, or intend to construct, anything other than a spur track to connect with the industrial tracks of the McLouth Steel Corporation. The purpose of the track constructed by the defendants is to provide a rail connection between the main line and the industry so that cars may be switched into and out of the plant, and so that loaded cars may be transported directly from other plants of McLouth to this plant and from this plant to other plants of McLouth.

"There is no evidence to indicate that the defendants have extended their railroad into territory not previously served by them, or that has been exclusively served by the plaintiff."

This is not a case, therefore, where one railroad raids or invades another carrier's territory and the decision in the Texas & Pacific case, supra, does not require reversal here.

That this conclusion is correct is demonstrated by the later opinion of the Supreme Court, also written by Mr. Justice Brandeis, in United States v. Idaho, 298 U.S. 105, 56 S.Ct. 690, 80 L.Ed. 1070, which held that a nine-mile railroad track built to serve a single industry, which was the only line serving the industry, was a spur track. In that case the Oregon Short Line Railroad, an interstate carrier, owned 9 miles of track, in Teton County, Idaho, known as the Talbot branch, and extending to a coal mine at Talbot. It applied to the Interstate Commerce Commission for authority to abandon that trackage. The state intervened through its Attorney General and Public Utilities Commission, who objected, among other things, on the ground that the Interstate Commerce Commission was without jurisdiction, since the so-called Talbot branch was in fact a "spur" or "industrial track" located wholly within the state. The objection was overruled; and authority to abandon the trackage was granted by division 4. Oregon Short Line Railroad

Company Abandonment, 193 I.C.C. 697. The District Court concluded that the Talbot branch was constructed and had been maintained for the purpose of serving a single industry; that practically no other industry was served; that this trackage did not invade new territory; that its continued operation or abandonment was of local and not of national concern; that it was therefore a spur. The Supreme Court affirmed this decision.

The instant case falls squarely within the holding in United States v. State of Idaho, supra, and is stronger on the facts for here a trackage of only 1,300 feet is involved. In addition, the physical characteristics of appellees' track show that it is a spur rather than an extension. It is a single track having no stations, communication lines or block signals. It has not been used for regular train movements and has been used only for switching cars into and out of The McLouth Steel Company property.

In accord with this decision is The Pennsylvania Railroad Co. v. Reading Company, D.C., 132 F.Supp. 616, which lays down intelligence tests for distinguishing between an extension and a spur. This case has recently been affirmed in 3 Cir., 226 F.2d 958. See also Missouri, K. & T. R. Company of Texas v. Texas & N. O. R. Company, 5 Cir., 172 F.2d 768, 770, in which the court declares:

> "We see no need to strain to hold these tracks which are in form and in purpose and effect ordinary industrial tracks to be 'extensions of the lines of railroads' ".

A number of the decisions relied on by appellant involve cases of invasion by one carrier of another carrier's territory and therefore fall within the exception of the Texas & Pacific case, supra, and are not controlling here.

Cf. Southern Pacific Co. v. Western Pacific California R. Co., 9 Cir., 61 F.2d 732; Missouri Pacific R. Co. v. St. Louis Southwestern Railway Company, 8 Cir., 73 F.2d 21; El Dorado & W. Railway Company v. Chicago, R. I. & P. Railway Company, 8 Cir., 5 F.2d 777; Marion & Eastern Railroad Company v. Missouri Pacific Railroad Company, 318 Ill. 436, 149 N.E. 492.

 We deem it unnecessary to discuss at length the validity of the contract of June 25, 1901. It was given in exchange for substantial consideration. Appellant contends that this contract will tend to make it violate its duties to the public as a common carrier. The principal contention on this point is that by operation of the spur track appellant's through trains will be delayed. However, appellant's own witnesses testified that no trains had been delayed by appellees' use of the crossing which had been in operation for several months when this case was heard below. The evidence that the trains will in the future be delayed is wholly conjectural. The District Court rightly refused to issue the declaratory judgment.

The judgment of the District Court is affirmed.