The **COLORADO & WYOMING RAIL-WAY COMPANY**, Appellant,

v.

The **COLORADO AND SOUTH-ERN RAILWAY COMPANY**, Appellee.

No. 71–1725.

United States Court of Appeals, Tenth Circuit.

Aug. 7, 1972.

Rehearing Denied Oct. 16, 1972.

Miles C. Cortez, Jr., Denver, Colo. (Thomas G. Brown, Philip G. Dufford, and David W. Furgason, of Welborn, Dufford, Cook, Phipps & Brown, Denver, Colo., with him on the brief), for appellant.

Richard M. Gleason, Chicago, Ill. (J. C. Street and W. L. Peck, Denver, Colo., with him on the brief), for appellee.

Before JONES*, SETH and Mc-WILLIAMS, Circuit Judges.

SETH, Circuit Judge.

This action arises under sections 1(18) and 1(20) of the Interstate Commerce Act, 49 U.S.C. § 1 et seq. The plaintiff railroad moved for a preliminary injunction against the continued construction and future operation over certain trackage built by defendant railroad, unless and until defendant obtains a certificate of public convenience and necessity from the Interstate Commerce Commission. Both parties are interstate carriers by rail and subject to the Act. Jurisdiction is based on 28 U.S.C. § 1337 as a proceeding arising under an Act of Congress regulating commerce. After a hearing on plaintiff's motion, the District Court ordered that a preliminary injunction be granted and from that order, defendant appeals.

The area in question is an area south-southeast of Pueblo, Colorado, known as the Minnequa area. The area's predominant industry by far is the CF&I Steel Corporation (CF&I). For the most part, the other industries in the area are allied to CF&I in that they either supply necessary materials or services to CF&I or utilize CF&I products or by-products.

The defendant, Colorado & Wyoming Railway Company, is a wholly-owned subsidiary of CF&I and does virtually all of the short-distance "switching" in the Minnequa area. Although the radius of the Minnequa area is only approximately 6,000 feet, the defendant operates four miles of main track and sixty-five miles of side, yard, and industrial trackage in this area. On the other hand, the plaintiff, Colorado & Southern Railway Company operates 692 miles of track in Colorado, New Mexico, and Wyoming. In the Minnequa area, both of the parties' "main" lines run generally north and south. The main lines of the parties do not cross at any point and all of the plaintiff's trackage lies east of all of defendant's trackage with the exception of the two and one-half miles of defendant's track which is the subject matter of this controversy.

This dispute arose when Public Service Company of Colorado announced plans to construct a new $63,000,000 power generating plant approximately 1.7 miles air-line south-southeast of CF&I. The sole function of the new plant will be to provide electric service

* Of the Fifth Circuit, sitting by designation.

to CF&I, necessitated by the latter's installation of new electric furnaces [1]. The new plant will be so located that the defendant would have to cross the tracks of plaintiff in order to reach the plant by its rails. Upon learning of the new power plant, defendant began constructing a track from the Minnequa area to the new plant site. The track, which has now been completed, is about 13,000 feet in length and cost approximately $365,000 to construct. On October 6, 1971, a few weeks after this construction had begun, plaintiff brought this action to enjoin defendant from continuing construction or use of the track until and unless defendant obtains a certificate of public convenience and necessity. Since the track is now completed, we need only consider that portion of the preliminary injunction relating to future operation over the track.

The issue is whether the track in question is an "extension" within the meaning of 49 U.S.C. § 1(18) or a "spur" within the meaning of section 1(22) of that title. If we agree with the District Court's finding that it is an "extension," then defendant may not operate until it obtains a certificate. However, Congress expressly exempted "spur, industrial, team, switching, or side tracks" from that requirement. The purpose of this legislation was remedial and, therefore, "exemption from its sweep should be narrowed and limited to effect the remedy intended." Piedmont & Northern Ry. v. Interstate Commerce Commission, 286 U.S. 299, 311, 52 S.Ct. 541, 545, 76 L.Ed. 1115. In other words, we must give a liberal or broad construction to the word "extension" and a limited or narrow construction to the words "spur" and "industrial." Interstate Commerce Commission v. Memphis Union Station Co., 360 F.2d 44 (6th Cir.); Chicago & Eastern Ill. R.R. v. Illinois Central R.R., 261 F.Supp. 289 (N.D.Ill.); Chicago, Milwaukee, St. P. & P. R.R. v. Northern Pacific R.R., 120 F.Supp. 710 (W.D.Wash.); Lancaster v. Gulf, C. & S. F. Ry., 298 F. 488 (S.D.Tex.), aff'd

sub. nom. Texas & Pacific Ry. v. Gulf, C. & S. F. Ry., 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578.

As we recognized in Union Pacific R. R. v. Denver & Rio Grande Western R. R., 198 F.2d 854 (10th Cir.), the guiding principles to be followed in determining this question were enunciated in Texas & Pacific Ry. v. Gulf, C. & S.F.Ry., 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578. In that case, the Court distinguished spur track from an extension as follows:

"The carrier was authorized by Congress to construct, without authority from the Commission, 'spur, industrial, team, switching or side tracks . . . to be located wholly within one state.' Tracks of that character are commonly constructed, either to improve the facilities required by shippers already served by the carrier or to supply the facilities to others, who being within the same territory and similarly situated are entitled to like service from the carrier. The question whether the construction should be allowed or compelled depends largely upon local conditions, which the state regulating body is peculiarly fitted to appreciate. Moreover, the expenditure involved is ordinarily small. But *where the proposed trackage extends into territory not theretofore served by the carrier, and particularly where it extends into territory already served by another carrier, its purpose and effect are, under the new policy of Congress, of national concern.* For invasion through new construction of territory adequately served by another carrier, like the establishment of excessively low rates in order to secure traffic enjoyed by another, may be inimical to the national interest. If the purpose and effect of the new trackage is to extend substantially the line of a carrier into new territory, the proposed trackage constitutes an extension of the railroad within the meaning of paragraph 18, although the line be short, and although the character of

---

1. It is important to note that there is no industrial development and there are no rail-road lines in the area lying between the new plant site and CF&I.

the service contemplated be that commonly rendered to industries by means of spurs or industrial tracks." (Emphasis added).

 The Texas & Pacific case involved a railroad which was attempting to invade a territory already served by another carrier. Applying the above standards, the Court held this to be an "extension" under section 1(18). In contrast, the facts of the present case reveal that the defendant railroad is attempting to enter a territory which has heretofore received no service because there has been no industry there. We understand the italicized portion of the above quotation to mean where the proposed trackage extends into territory not theretofore served by that carrier, whether or not it is already served by another carrier, its purpose and effect are, under the policy of Congress, of general or national concern. An analysis of the cases following Texas & Pacific discloses the essential distinction to be that a spur track is one designed to either provide expanded services to that carrier's existing customers or to extend service to new customers in the same general area as the existing customers, whereas an extension contemplates serving new customers in an area not theretofore served by that railroad.

While the decisions on this issue have not been uniform, the majority of them have held the new trackage to be an extension, either because the constructing carrier was invading a territory already served by another carrier, Texas & Pacific, supra; Georgia Southern & F. Ry. v. Atlantic Coast Line R.R., 373 F.2d 493 (5th Cir.); Union Pacific R.R. v. Denver & Rio Grande Western R.R., 198 F.2d 854 (10th Cir.); Missouri, Pacific R.R. v. St. Louis Southwestern Ry., 73 F.2d 21 (8th Cir.); Missouri Pacific R.R. v. Chicago, R.I. & P.Ry., 41 F.2d 188 (8th Cir.); Chicago & Eastern Ill. R.R. v. Illinois Central R.R., 261 F.Supp. 289 (N.D.Ill.); Marion & E.R.R. v. Missouri Pacific R.R., 318 Ill. 436, 149 N.E. 492; or because the constructing carrier was extending his service into territory not theretofore served by any carrier.

Southern Pacific Co. v. Western Pacific Cal. R.R., 61 F.2d 732 (9th Cir.); Missouri-Kansas-Texas R.R. v. Northern Oklahoma Rys., 25 F.2d 689 (8th Cir.); Gilmore v. Sandersville R.R., 149 F. Supp. 725 (M.D.Ga.); Chicago, Milwaukee, St. P. & P. R.R. v. Northern Pacific R.R., 120 F.Supp. 710 (W.D.Wash.), aff'd 225 F.2d 840 (9th Cir.).

Defendant relies heavily on Chicago, Milwaukee, St. P. & P.R.R. v. Chicago & E.I.R.R., 198 F.2d 8 (7th Cir.). That case also involved the construction of a new power plant and one of two competing railroads had constructed a track to it at a distance of approximately 3.15 miles. The court there held the track to be a "spur," thus exempt from section 1(18). However, in that case, there was a coal mine "in close proximity" to the power plant and this coal mine was already being served by the constructing carrier. Thus, this case was merely an example of a railroad extending services to new customers in the same area as existing customers. In the present case, defendant's track is two and one-half miles long and would only serve one customer, one whom no rail carrier had served before.

Also distinguishable are Missouri, K. & T. R.R. of Texas v. Texas N.O.R.R., 172 F.2d 768 (5th Cir.), and New York Central R.R. v. Chicago & Eastern Ill. R.R., 222 F.2d 828 (7th Cir.). In both of these cases, the constructing carrier's spur was built into an area already bounded by its main line, was less than a mile in length, and cost less than $55,000 to build. None of these factors are present here. Neither is United States v. Idaho, 298 U.S. 105, 56 S.Ct. 690, 80 L.Ed. 1070, applicable. In that case, the railroad sought to abandon a spur track which was built at the request and expense of local shippers. There was no inter-railroad competition involved, and the Court found it to be a purely local problem.

 Viewing the facts of the present case in the light of the decisions and the statutes, we uphold the finding of the District Court that defendant's proposed trackage constitutes an "exten-

sion," and therefore that it should be enjoined from operating on it unless and until it obtains a certificate of public convenience and necessity from the Interstate Commerce Commission.

Affirmed.

### OPINION ON PETITION FOR REHEARING

The appellant has called our attention to the fact that the opinion of this court heretofore entered in this action makes no mention of the particular defenses raised by The Colorado & Wyoming Railway Company and the propriety of further proceedings, and this could lead to an erroneous interpretation.

The matter was before us only on a preliminary injunction entered by the trial court, and the trial court only decided the track was an extension. We affirmed as to this only. No final hearing has been held in the trial court, and certainly the matters of a permanent injunction, damages, or the right to provide service have not been considered. Our opinion should not be construed to prevent such consideration or the seeking of other relief by either party consistent with our decision on the extension issue.