The NEW YORK CENTRAL RAILROAD COMPANY, a corporation, Plaintiff-Appellant,

v.

CHICAGO & EASTERN ILLINOIS RAILROAD COMPANY, a corporation, Defendant-Appellee.

No. 11259.

United States Court of Appeals Seventh Circuit.

June 1, 1955.

Carl M. Gray, Petersburg, Ind., Marvin A. Jersild, Chicago, Ill., for appellant.

David O. Mathews, Chicago, Ill., Homer B. Aikman, Terre Haute, Ind., Frank F. Vesper, Washington, D. C., for appellee.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

DUFFY, Chief Judge.

Plaintiff, hereinafter referred to as "Central", sought in this action to enjoin defendant, hereinafter called "C&EI", from undertaking and proceeding further with the construction of a railroad track, at a specified location wholly within Vanderburgh County, Indiana. Plaintiff asserted a claim under Par. I, § 1 of the Interstate Commerce Act, sub-sections 18 to 22 inclusive, 49 U.S.C.A. Part I, § 1(18–22) incl., contending that C&EI should have applied to and obtained from the Interstate Commerce Commission a Certificate of Public Convenience and Necessity before undertaking the construction of the railway track. Among other things, the complaint alleged the proposed track construction by C&EI was an invasion of Central's territory, and that Central was ready and willing to furnish transportation thereto upon proper request therefor. The trial court made findings of fact and conclusions of law and entered judgment for defendant.

C&EI has served Evansville, Indiana, for more than one hundred years. Its main line running north to Chicago, Illinois, leaves the city limits of Evansville, Indiana, at Pigeon Creek, and extends directly north of that point for several miles. Prior to 1921 C&EI had a line which branched from its main line in a north-northeasterly direction at a point called Straight Line Junction, which Junction is located ¾ of a mile north of Pigeon Creek, and about 1000 feet north of Lynch Road, a highway running in an easterly and westerly direction. This junction is a short distance east of C&EI's principal classification yard at Wansford, which extends both north and south of Lynch Road. In 1921 this branch line was sold to companies which have since been absorbed into Central.

The area in controversy consists of undeveloped farm land. It lies east of the main line of C&EI and east and southeast of Central's line extending north-northeasterly from Straight Line Junction. Both C&EI and Central have

purchased and presently own real estate in this area and are holding same for industrial development. The construction of industrial tracks to encourage the location of industry in a particular locality is a normal practice among railroads. The area in question lying north of Lynch Road comprises some 275 acres.

On March 9, 1951, C&EI applied to the Indiana State Highway Commission for permission to cross United States Highway 41 at a point immediately south of Lynch Road. Highway 41 lies adjacent to and parallel with C&EI's main line at this point. The Commission granted permission, and C&EI then applied to the Indiana Public Service Commission for an order authorizing the construction and operation of a switch and line of track over and across Highway 41. Authority to do so was granted on April 30, 1951. C&EI constructed 507 feet of track which, after crossing the highway, ran easterly along the south side of Lynch Road. During November, 1952, 1702 feet additional trackage running easterly was constructed and was connected to the east end of the first trackage. In September, 1953, a turnout was cut into the main line and connected with the west end of the previously constructed trackage. The total length of all this trackage was 2577 feet. About 1700 feet of the track and roadbed had been completed. On the balance the ties are widely spaced and the track has not been ballasted.

At the time C&EI constructed the first portion of the trackage there was no industry located in the area adjacent thereto. No use has been made of the trackage thus constructed except for team track deliveries of large transformers to the Southern Indiana Gas & Electric Company and for boxcar storage. In February, 1954, Creasey Company, Inc., a wholesale grocery, arranged to purchase from C&EI a ten-acre site located adjacent to the north side of Lynch Road and directly across that road from the trackage built by C&EI. Creasey Company has built a warehouse on the site and requested C&EI to build trackage to serve the warehouse.

At a point 1750 feet from the switch on its main line C&EI proposed to construct a take-off and 575 feet of additional trackage to the Creasey Company property line. Defendant then proposed to construct an additional 325 feet of trackage on the Creasey property at the expense of that company.[1]

In 1942 a manufacturing plant was built north of Straight Line Junction and west of Central's main line. Since 1946 this plant has been operated by International Harvester Company. This is the only manufacturing plant in this area served by Central. However, Central has served industries in the Evansville area over the lines of C&EI pursuant to an operating agreement which is still in effect.

The District Court found that C&EI's trackage adjacent to Lynch Road and the 575 feet of new construction will not be accorded regular or scheduled train service; that no telephone or telegraph service and no station, agents or loading platforms, nor any mail, express, or passenger service will be maintained by C&EI; that carload traffic only will be delivered or received by C&EI over such trackage. The Court also found that no through train service with any other road will be maintained by C&EI in connection with such trackage.

The District Court made a finding of fact that in constructing the trackage to serve the Creasey Company's warehouse, C&EI is not invading any territory which Central can justifiably claim as its exclusive tributary territory, and will not tap any established traffic now handled by either Central or any other carrier.

---

1. In order that Creasey Company could complete its warehouse, it was stipulated pending the determination of this appeal that C&EI might construct the 575 feet of track needed to reach the warehouse site. The warehouse has since been completed and rail service to the warehouse is being supplied by both C&EI and Central under an arrangement whereby C&EI handles Central's cars free of charge.

The Court also found both as a finding of fact and as a conclusion of law that the proposed track is a spur or industrial track and not an extension.

The applicable provisions of Part I, § 1(18) of the Interstate Commerce Act are as follows: "(18) * * * No carrier by railroad subject to this chapter shall undertake the extension of its line of railroad, or the construction of a new line of railroad, or shall acquire or operate any line of railroad, or extension thereof, or shall engage in transportation under this chapter over or by means of such additional or extended line of railroad, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad, * * *."

Subsection (20) of the Act provides, among other things, that any construction or operation contrary to the provisions of subsection (18) may be enjoined by any court of competent jurisdiction by any party in interest.

Subsection (22) of the Act reads: "(22) * * * The authority of the commission conferred by pararaphs (18) to (21) of this section, both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching, or side tracks, located or to be located wholly within one State, * * *."

We must first determine whether the Findings of Fact made by the District Court are supported by substantial evidence, and if so, whether the Conclusions of Law are correct. However, the important question of whether the proposed track is a "spur" or "industrial" track within the meaning of 49 U.S.C.A. Part I, § 1(22) is probably a mixed question of fact and law. United States v. State of Idaho, 298 U.S. 105, 109, 56 S.Ct. 690, 80 L.Ed. 1070.

■ In this suit Central is seeking injunctive relief. As in any ordinary suit in equity, Central had the burden of proving the averments of its complaint. In Texas & Pacific Railway Company v. Gulf, Colorado & Santa Fe Railway Company, 270 U.S. 266, 274, 46 S.Ct. 263, 265, 70 L.Ed. 578, a case decided under the same statute, the Court said: " * * * In the case at bar, the District Court, having jurisdiction generally of the parties and of the subject-matter, was called upon to determine whether an allegation of the bill, essential to the cause of action, was established. * * * "

Both Central and C&EI, for several years prior to the suit, have endeavored to locate industry in the area east of C&EI's main line, and each was willing to furnish railroad service in the area. It should be noted that the International Harvester property which is now served by Central, while east of C&EI's main line, is west of Central's track, and hence is not located within what has been called the area in dispute. Central has not been serving any industry east of its tracks in this area. Generally speaking, C&EI's property is in the southern portion of the disputed area, while Central's property is located in the northern end thereof.

■ There was substantial evidence to support the finding that in constructing the tracks to serve Creasey Company's warehouse C&EI will not tap any established traffic now handled by Central or any other carrier. This property is located closer to C&EI's main line than to that of Central. The extensive switching yards maintained by C&EI are immediately adjacent to the point where the track to Creasey Company joins the main line of C&EI. In order to serve the Creasey Company's property, Central would have to build not less than 3800 feet of track at an estimated cost of $55,000, exclusive of right-of-way which has not been obtained. The estimated cost to C&EI to construct the additional 575 feet was $7,000, while the cost of all its trackage adjacent to Lynch Road including the 800 feet extending beyond the turnout to Creasey Company's warehouse, was estimated to cost $30,000.

Central places its principal reliance upon Texas & Pacific Railway Company v. Gulf, Colorado & Santa Fe Railway Company, 270 U.S. 266, 46 S.Ct. 263, hereinafter called Texas & Pacific. Among other. cases C&EI claims that United States v. State of Idaho, 298 U.S. 105, 56 S.Ct. 690, hereinafter called Idaho is authority for its position here. It might be noted that Justice Brandeis wrote both the Texas & Pacific and the Idaho opinions for the Court.

Under the facts of Texas & Pacific the Court held the proposed track to be an extension and not a "spur" or "industrial" track. Santa Fe proposed the construction of 7½ miles of trackage to cost $510,000 which would tap territory served by Texas & Pacific. It was estimated that such trackage might divert freight revenues from Texas & Pacific amounting to $500,000 per year. The Court stated, 270 U.S. at page 278, 46 S.Ct. at page 266: " *  *  * The question whether the construction should be allowed or compelled depends largely upon local conditions, which the state regulating body is peculiarly fitted to appreciate. Moreover, the expenditure involved is ordinarily small. But where the proposed trackage extends into territory not theretofore served by the carrier, and particularly where it extends into territory already served by another carrier, its purpose and effect are, under the new policy of Congress, of national concern. *  *  * "

In Idaho, the Oregon Short Line Railroad owned nine miles of track which extended from its main line to a coal mine at Talbot. It sought to abandon this trackage. The Court said that the sole controversy in that case was whether the trackage was a "spur" or "industrial" track, and therefore excluded from the jurisdiction of the Commission. In holding that the track was a "spur" or "industrial" track the Court said, 298 U.S. at pages 108–109, 56 S.Ct. at page 692: "The Oregon Short Line has never maintained a train schedule or regular service over this trackage; has never furnished express, passenger, or mail service; has maintained no buildings, loading platforms, or agent at any point along the trackage; and has had no telegraph or telephone line in connection therewith. *  *  * "

We think the Findings of Fact of the District Court are fully supported by substantial evidence. We hold that the Court's conclusion that the proposed track is a "spur" or "industrial" track within the meaning of subsection (22), Part I, § 1, Title 49 U.S.C.A. is correct, and is wholly warranted by such decisions as United States v. State of Idaho, 298 U.S. 105, 56 S.Ct. 690; Missouri, K. & T. R. Co. of Texas v. Texas & N. O. R. Co., 5 Cir., 172 F.2d 768; Chicago, M. St. P. & P. R. Co. v. Chicago & E. I. R. Co., 7 Cir., 198 F.2d 8; Jefferson County v. Louisville & N. R. Co., Ky., 245 S.W. 2d 611.

Central tried to make an issue in this case by alleging upon information and belief that C&EI was threatening to extend its track from the Creasey Company's property in a northerly direction so as to reach property located as close or closer to Central's track than to C&EI's main line. We do not consider that question to be before us. C&EI denied any intention to build such trackage. The District Court made no findings on the contention. Subsection (20) of the Act hereinbefore cited authorizes an injunction to prevent "any construction, operation, or abandonment" contrary to the provisions of the Act. We can cross that bridge when we come to it.

Judgment affirmed.