CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, Plaintiff,

v.

Guy A. THOMPSON, Trustee, Missouri Pacific Railroad Company, Debtor, Defendant.

No. 3043.

United States District Court
E. D. Arkansas, Western Division.

Oct. 12, 1955.

Wright, Harrison, Lindsey & Upton, Edward L. Wright, Robert S. Lindsey, Little Rock, Ark., for plaintiff.

Mehaffy, Smith & Williams, Pat Mehaffy and Hershel H. Friday, Little Rock, Ark., for defendant.

LEMLEY, District Judge.

This cause was tried to the Court, and was submitted upon the pleadings, pretrial briefs, oral testimony, documentary evidence, and oral argument; the following memorandum incorporates our findings of fact and conclusions of law, and all requests for such findings and conclusions are denied, except to the extent that they are incorporated herein.

The plaintiff, Chicago, Rock Island & Pacific Railroad Company, hereinafter called Rock Island, brought this action for the primary purpose of enjoining the defendant, hereinafter referred to as the Missouri Pacific, from constructing a line of railroad track from a point on its main line in Pulaski County, Arkansas a short distance southwest of Little Rock to the northeast corner of certain property owned by AMF Cycle Company where that company is engaged in the construction of a plant for the manufacture of bicycles. It is the theory of the plaintiff that the proposed trackage constitutes an extension of the defendant's line of railroad within the meaning of paragraph 18 of Section 1 of the National Transportation Act,[1] and that it cannot be lawfully constructed without a certificate of public convenience and necessity from the Interstate Commerce Com-

---

1. 49 U.S.C.A. § 1, paragraph (18). This section reads in part as follows: "No carrier by railroad subject to this chapter shall undertake the extension of its line of railroad, * * * or shall engage in transportation under this chapter over or by means of such * * * extended line of railroad, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation of such * * * extended line of rail-

mission, which, admittedly, the Missouri Pacific has not obtained.

In its original complaint the plaintiff in addition to praying for the issuance of an injunction against the Missouri Pacific's proposed construction, prayed in the alternative that if we should determine that the trackage in question is not an extension of the defendant's line, but is simply a spur or industrial track within the exemption set forth in paragraph 22 of Section 1 of the Act,[2] we then enter a declaratory judgment to the effect that the Rock Island is free to build trackage into and through the so-called "industrial area" in which the cycle company's plant is located, which area will be hereinafter more fully described. In the course of the trial the Rock Island sought and obtained leave to amend its complaint so as to set up a second alternative prayer for relief, namely that if we should hold that the Missouri Pacific's trackage is a spur or industrial track, and if we should further hold that the Rock Island is not free to build a track designed to serve the entire industrial area without first obtaining a certificate of public convenience and necessity, we then enter a declaratory judgment to the effect that plaintiff is free to build a track designed to serve the AMF plant alone on the theory that such track would likewise be simply a spur or industrial track. Jurisdiction of plaintiff's primary claim for relief is based upon 49 U.S.C.A. § 1, paragraph (20); and its claims for alternative relief are based upon 28 U.S.C.A. § 2201, diversity being present, and the amount in controversy being in excess of $3,000.

The position of the defendant is that the trackage which it is proposing to build is nothing but a spur or industrial track designed to serve the AMF plant alone, and that no certificate from the Commission is necessary for such construction. The defendant further contends, in opposition to plaintiff's prayers for alternative relief, that any trackage which Rock Island may build, either to serve the industrial area as a whole or the AMF site solely, would be an extension of its line of railroad, and that since Rock Island has no certificate of public convenience and necessity, such construction would be unlawful. It still further contends that in point of fact the Rock Island does not at this time actually contemplate building any track into the area, and that for that reason there is no actual controversy existing between the two carriers as to any Rock Island trackage, and that the latter road stands in no need of declaratory relief at this time.

Before discussing the conflicting theories of the parties, we deem it well to set out some of the background facts surrounding this controversy:

Both of the contending carriers have main line tracks running into and through the City of Little Rock; south and southwest of that city the two main lines are roughly parallel, and run generally from northeast to southwest, the distance between them being, as far as we are here concerned, from a little more than a mile to more than two miles. A short time ago the Industrial Development Company of Little Rock, an Arkansas corporation, the stockholders of which are Little Rock business men, acquired a tract of land, consisting of approximately 600 acres, and known as the Little Rock Industrial District, and which we shall call the "industrial district" or the "industrial area," located about two miles southwest of the city limits and lying between the main lines of plaintiff and

road, * * *." There is no question that both of the railroads involved in this case are interstate carriers and are subject to the provisions of the statute just quoted; nor is there any question that inbound and outbound shipments of freight into and from the cycle company plant will constitute interstate commerce.

2. 49 U.S.C.A. § 1, paragraph (22). That

paragraph, insofar as here pertinent, is as follows: "The authority of the commission conferred by paragraphs (18) to (21), both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching, or side tracks, located or to be located wholly within one State, * * *." The trackage involved here will be located entirely in Pulaski County, Arkansas.

46

defendant. When viewed as a unit, this area is about equi-distant from both main lines.

It was the purpose of the Development Company when it acquired these lands to develop the same for industrial purposes and to induce industries to locate there. At the time of the purchase[3] said lands were wild, unimproved and unenclosed, and were physically separated from Little Rock by Fourche Creek, a substantial stream. Furthermore, they were separated from the Rock Island main line on the east by Little Fourche Creek, which is also a substantial stream. In order to carry out its designs the Development Company expended very substantial sums of money to bring in utilities and open up the district for industry, and it has been successful in inducing the AMF Cycle Company to locate there. No other company, however, has yet come in or firmly agreed to do so, although the evidence is to the effect that negotiations with another company are in their final stage.

In connection with its project the Development Company employed a firm of planning engineers in Dallas, Texas, and was advised by that firm that in order to attract industry to the area it would be at the least highly desirable that the area be served by both the Missouri Pacific and the Rock Island so that industries locating there would have the benefits of multi-line service. And in its contract with AMF the Development Company contracted that the former company would have such service from both roads by November 30 of the current year.

During a part of 1954 and up until June of the current year the Development Company conducted negotiations with representatives of the industrial departments of both the plaintiff and the defendant looking toward the construction of a line of track running through the district from the main line of the Rock Island on the east to the main line of the Missouri Pacific on the west and connecting with those carriers, such line to be jointly owned and operated by the two roads. The Rock Island was agreeable to this proposal, and it appears that the negotiating representatives of the Missouri Pacific were also agreeable thereto; finally, however, in June of this year the top managing officials of the Missouri Pacific refused to enter into any joint operation with the Rock Island, and the plan had to be abandoned. Whether, in view of the negotiations that had taken place and the alleged representations of the Missouri-Pacific's representatives, the action of the Missouri Pacific in refusing to go ahead with the original plan was legally justified or not is not an issue in this case.

As stated, the Development Company had contracted to provide AMF with service from both railroads, and after the refusal of the Missouri Pacific to engage in joint operations in the industrial district, the Development Company sought some other means of fulfilling its contractual obligations in the respect just mentioned. With that end in view, it caused to be incorporated the Little Rock Industrial District Railroad Company, which was chartered as a common carrier; it was contemplated that the last named corporation would build a line of track between the main lines of the plaintiff and defendant and would operate the same; and the Development Company donated to its subsidiary the same right of way over which it had been originally planned that the plaintiff and defendant would operate. In July of the current year the Development Company and the Little Rock Industrial District Railroad Company commenced the construction of trackage in the district, and at about the same time the Missouri Pacific commenced to build a track from its main line in the direction of the AMF site. Those actions set off a train of liti-

---

3. The Development Company owns the larger portion of the industrial area and holds options on the remainder; the portion of the area owned by the Company lies nearer to the main line of the Missouri Pacific than to that of the Rock Island.

gation of which the instant case is the third installment.

The first suit in the series, No. 3013 on the docket of this court, was filed by the Development Company against the Missouri Pacific and the Rock Island; the primary purpose of that suit was to enjoin the Missouri Pacific from building its track without a certificate of public convenience and necessity, the same thing that the Rock Island is trying to do in this case. While the Rock Island was named as a defendant in that suit, no particular relief was prayed as against it, and there does not appear that there has ever been any controversy between the Development Company and the Rock Island.

The second suit, No. 3014, was filed by the Missouri Pacific against the Development Company and its subsidiary corporation and against the officers and stockholders of both corporations to enjoin the construction of their independent railroad without having first obtained such certificate. The Rock Island was not a party to that suit.

The plaintiffs in both of those cases sought preliminary, as well as permanent injunctive relief, but it was agreed that both cases should be submitted finally at the same time that hearings were held on the respective applications for preliminary injunctions. At the conclusion of such hearings, which were conducted at the same time, we dismissed No. 3013 upon the ground that the Development Company was not a "party in interest" within the meaning of paragraph 20 of Section 1 of the Act, our holding being based on the opinion of Mr. Justice Frankfurter in L. Singer & Sons v. Union Pacific R. Co., 311 U.S. 295, 305–308, 61 S.Ct. 254, 85 L.Ed. 198, in which opinion a majority of the Court concurred. From our judgment of dismissal in that case the Development Company has appealed. In No. 3014 we enjoined the Development Company and the other defendants from building their contemplated line of track on the ground that such construction was the building of a new line of railroad and was within the prohibition of Paragraph 18 of Section 1 of the Act. No appeal was taken from that order.

After we handed down our decision in No. 3014, the Little Rock Industrial District Railroad Company reconveyed its right of way to its parent corporation, and the latter sought to have us modify our injunction so as to permit it, a non-carrier, to build a line of track "on its own land." This we declined to do; and we likewise declined to permit the defendants, after final disposition of the case, to file answers and a counterclaim on behalf of the Little Rock Industrial District Railroad Company, the view being taken that if that company desired to sue the Missouri Pacific, it was free to do so in an independent action. Since that time the Little Rock Industrial District Railroad Company has filed an application for a certificate with the I.C. C. to enable it to construct its proposed line, but, apparently, considerable time will elapse before such application will be acted upon.

When the cycle company originally made its arrangements with the Development Company, it was not felt that the former would have any actual need for rail service until sometime in 1956; it has developed, however, that within the next few weeks the company will be in urgent need of such service in order to obtain delivery of certain heavy machinery and chemicals that are normally shipped by rail and that are not adapted for practical transportation otherwise. In an effort to try to work out some method whereby the immediate needs of the cycle company could be met without prejudice to the basic positions of the other parties, we held, on September 8, at the request of that company, an informal conference at which all interested parties were represented. Although a number of propositions were put forward and discussed, nothing concrete was accomplished. Shortly thereafter the Missouri Pacific, which had in the meantime procured the dissolution of a temporary injunction issued by the Chancery Court of Pulaski County, Arkansas, at

the suit of the County, which order restrained the railroad from crossing a certain county road, recommenced its construction, and the Rock Island filed this suit. After this action was commenced, the cycle company began to take steps to build its own line of track from its plant out to the main line of the Missouri Pacific. In that connection the evidence shows that the right of way over which AMF intends to build was donated to it by the Development Company and is part of the same right of way involved in the previous litigation which has been mentioned.

It will be observed from the foregoing that the Development Company and AMF Cycle Company both want multi-line service within the industrial district, and that the Rock Island desires to serve the district, including the AMF site. The Missouri Pacific, on the other hand, wishes to give exclusive service to the AMF Company, and, likewise, does not wish the Rock Island to serve any part of the district which it considers to be its own normal service or tributary territory.

 In taking up the contentions of the parties it should be emphasized that we are not here concerned with any questions of public convenience and necessity in connection with rail service to the industrial district, nor are we concerned with the plans and wishes of the Development Company or with the desires of AMF for multi-line service; those are matters properly to be considered by the Commission in appropriate proceedings before it. Our task is simply to characterize the trackage here involved as either an extension or extensions to the line or lines of one or both railroads, in which case it cannot be lawfully built without authority from the Commission, or spur or industrial trackage, with respect to which the Commission has no jurisdiction.

In enacting the Transportation Act Congress did not define the term "extension of line" or the terms "spur track" and "industrial track"; and dictionary definitions and industrial usage are of little help in making the characterization that we are called upon to make. Lancaster v. Gulf, Colorado & Santa Fe Ry. Co., D.C.Tex., 298 F. 488, 490.[4] "A truer guide", said the Supreme Court in the same case, " * * * is furnished by the context and by the relation of the specific provisions here in question to the railroad policy introduced by Transportation Act of 1920." Texas & Pacific Railway Company v. Gulf, C. & S. F. Ry. Co., 270 U.S. 266, 277, 46 S.Ct. 263, 266, 70 L.Ed. 578. With reference to that policy the Supreme Court then went on to say:

* * * "By that measure, Congress undertook to develop and maintain, for the people of the United States, an adequate railway system. It recognized that preservation of the earning capacity, and conservation of the financial resources, of individual carriers, is a matter of national concern; that the property employed must be permitted to earn a reasonable return; that the building of unnecessary lines involves a waste of resources; and that the burden of this waste may fall upon the public; that competition between carriers may result in harm to the public, as well as in benefit; and that, when a railroad inflicts injury upon its rival, it may be the public which ultimately bears the loss. * * * The act sought, among other things, to avert such losses.

"When the clauses in paragraphs 18 to 22 are read in the light of this congressional policy, the meaning and scope of the terms 'extension' and 'industrial track' become clear. The carrier was authorized by Con-

4. The foregoing is the district court style of the case that went to the Supreme Court under the style of Texas & Pacific Ry. Co. v. Gulf, C. & S. F. Ry. Co., 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578. It is the leading case dealing with the questions here involved, and, apparently, was the first case in which those questions arose. All subsequent decisions cite the opinion of the Supreme Court therein and endeavor to apply the principles laid down in that opinion.

gress to construct, without authority from the Commission, 'spur, industrial, team, switching or side tracks * * * to be located wholly within one state.' Tracks of that character are commonly constructed, either to improve the facilities required by shippers already served by the carrier or to supply the facilities to others, who being within the same territory and similarly situated are entitled to like service from the carrier. The question whether the construction should be allowed or compelled depends largely upon local conditions, which the state regulating body is peculiarly fitted to appreciate. Moreover, the expenditure involved is ordinarily small. But where the proposed trackage extends into territory not theretofore served by the carrier, and particularly where it extends into territory already served by another carrier, its purpose and effect are, under the new policy of Congress, of national concern. For invasion through new construction of territory adequately served by another carrier, like the establishment of excessively low rates in order to secure traffic enjoyed by another, may be inimical to the national interest. If the purpose and effect of the new trackage is to extend substantially the line of a carrier into new territory, the proposed trackage constitutes an extension of the railroad, within the meaning of paragraph 18, although the line be short, and although the character of the service contemplated be that commonly rendered to industries by means of spurs or industrial tracks. Being an extension, it cannot be built unless the federal Commission issues its certificate that public necessity and convenience require its construction. * * *" 270 U.S. at pages 277–279, 46 S.Ct. at page 266.

■■ Another good statement concerning the Congressional policy under-

lying the Act is to be found in Union P. R. Co. v. Denver & R. G. W. R. Co., 10 Cir., 198 F.2d 854, 858:

"The Transportation Act placed the railroad systems of the country more under the control of the Interstate Commerce Commission than they had previously been, with power vested in the Commission to supervise their * * * construction of new lines. The underlying purpose of * * * paragraph (18) of the Act * * * was to prevent improvident and unnecessary expenditures for the construction and operation of lines not needed to insure adequate service; to protect interstate carriers from weakening themselves by constructing and operating superfluous lines, and to protect them from being weakened by another carrier operating in interstate commerce a competing line not required in the public interest; and to preserve well balanced competition among competing carriers, that being deemed in the public interest. * * * In the enactment of that particular provision, Congress acted in the considered belief that unbridled competition among carriers may not be compatible with public interest but may in some instances result in harm to the public."

Since the question of whether a given stretch of trackage is an "extension of line" or whether it is merely a "spur" or "industrial" track is a mixed one of law and fact, Texas & P. R. Co. v. Gulf, C. & S. F. R. Co., supra; United States v. Idaho, 298 U.S. 105, 56 S.Ct. 690, 80 L.Ed. 1070; New York Central R. Co. v. Chicago & Eastern Illinois R. Co., 7 Cir., 222 F.2d 828, 831; and since such question must be answered in each case by an appraisal of the particular facts presented in the light of the Congressional policy that has been mentioned, the reported decisions, which, incidental-

ly are not particularly numerous,[5] are more valuable as illustrating the lines of approach employed and the factors considered by the courts in cases of this kind than as furnishing absolute rules of decision.

Coming now to a direct consideration of the Rock Island's claim for injunctive relief, which is based upon the contention that the entire industrial district must be considered as a unit, and that any building into it by either carrier would be an extension of its line, calling for the issuance of a certificate of public convenience and necessity, we find from the evidence that, at least at the present time, the Missouri Pacific has no intention of building trackage to serve the entire area, but proposes solely to serve the AMF Cycle Company. The trackage proposed to be constructed is not of main or branch line type, but is typical of industrial or spur trackage, the rails to be used being second hand or re-lay rails, around fifteen years old, curve worn and engine burned. There will be no mail, passenger, telegraph or express service over the proposed trackage or any scheduled or regular train movement; the Missouri Pacific does not propose to construct any stations, buildings or loading platforms on the proposed route, and will maintain no agents thereon. The only service contemplated is switching service incidental to line haul movement. If the Missouri Pacific is permitted to build this track, it will place AMF within its Little Rock reciprocal switching limits, which will make available to AMF without additional charge the cars and services not only of the Missouri Pacific but also of the Rock Island, and of the St. Louis Southwestern Railway Company as well. While the AMF site is not within the present yard limits of the Missouri Pacific, the uncontradicted evidence on behalf of the latter is to the effect that those yard limits can be extended so as to include the site in question.

While it is true that if the entire area, including the eastern portion thereof on which the Development Company holds options, be considered as a unit, it lies about equi-distant from both main lines,[6] the AMF site proper is located much closer to the main line of the Missouri Pacific than to that of the Rock Island. In that connection the evidence shows that the airline distance from the Missouri Pacific to the closest point of the AMF property is 2050 feet, whereas it is 6980 feet from the Rock Island to the closest point on said property; the proposed terminus of the Missouri Pacific's trackage is the northeast corner of the AMF site, and the airline distance from the Missouri Pacific's main line to that point is 2710 feet, whereas such point is 7340 feet from the Rock Island. The trackage distance from the Missouri Pacific to the proposed terminus just mentioned is about 3455 feet, whereas the trackage distance from the Rock Island to that point is about 8200.

As far as cost is concerned, the evidence shows that it will cost the Missouri Pacific between $35,000 and $55,000, exclusive of right of way, to build this track; as against a cost to the Rock Island of $82,000 to $104,000 to build a similar track from its main line to the

5. In addition to the cases already cited we call attention to the following: Missouri Pacific R. Co. v. Chicago, Rock Island & Pac. R. Co., 8 Cir., 41 F.2d 188, certiorari denied 282 U.S. 866, 51 S.Ct. 74, 75 L. Ed. 765; Southern Pac. R. Co. v. Western Pac. Cal. R. Co., 9 Cir., 61 F.2d 732; Missouri Pacific R. Co. v. St. Louis Southwestern Ry. Co., 8 Cir., 73 F.2d 21; Missouri, K. & T. R. Co. v. Texas & N. O. R. Co., 5 Cir., 172 F.2d 768; Chicago, M., St. P. & P. R. Co. v. Chicago & E. I. R. Co., 7 Cir., 198 F.2d 8; Chicago, M., St. P. & P. R. Co. v. Northern Pac. Co., D.C.Wash., 120 F.Supp. 710; and Pennsylvania R. Co. v. Reading Co., D.C.Pa., 132 F.Supp. 616.

6. While the foregoing statement is true when the extreme northwest and southeast extremities of the district as now constituted are considered as measuring points, it is not true if the original acquisition only be considered. About ninety percent of that acquisition was closer to the Missouri Pacific than to the Rock Island.

site, the evidence further shows that the freight revenue which will be produced by AMF during its first year of operations and retained by the initial carrier or carriers [7] will amount to around $100,000, and increases in future years are to be expected.

The Missouri Pacific's main line has been located along its present route for approximately eighty years, during which time it has held itself out as being ready, willing and able to serve industries and shippers located on both sides of its right of way, and it has maintained and now maintains spur or team tracks both north and south of the AMF site for the purpose of serving the public, although due to the undeveloped nature of the general area there has not until recently been much demand for rail service. As a matter of fact, after the 1927 flood the Missouri Pacific constructed a line of track running westward from its main line at about the point where the present proposed construction is to begin for the purpose of hauling dirt for its own use, and left the track in place for a number of months in case any shippers desired to avail themselves of it; there was no demand for service from that track, however, and it was removed. The AMF site is not only much closer to the Missouri Pacific than it is to the Rock Island, but is also much more accessible to the Missouri Pacific than it is to the Rock Island, there being no difficulties of terrain to be overcome. It appears entirely feasible for the Missouri Pacific to serve the site, and, as a matter of fact, the United States District Court for the Eastern District of Missouri has found, in connection with the reorganization proceedings of that railroad, that such service is feasible. In view of those facts we feel that the AMF site is within the normal service or tributary territory of the Missouri Pacific. Indeed, it appears to us that had the Development Company not been in the picture, and had AMF simply located its plant at the site which

it finally chose, there would have been no serious contention that said site was not within the territory of the Missouri Pacific. Strength is lent to this view by the fact that when AMF started making plans to build its own trackage, it elected to build toward the Missouri Pacific, and it has no plans at this time to build toward the Rock Island, although the right of way conveyed to it by the Development Company extends eastward to that Company's property line.

When the facts above set forth are considered in the light of the principles announced in the decided cases that have been cited, we are satisfied that the Missouri Pacific's proposed construction is simply a spur or industrial track, rather than an extension of its line, and that no injunction should be issued. As stated, the present purpose of the Missouri Pacific is to serve the AMF plant alone, not the entire district; the proposed construction and service are typically spur or industrial track, as opposed to main or branch line; the distance between the Missouri Pacific's main line and the northeast corner of the AMF property is short, and the location is, in our opinion, within the defendant's normal service territory; the cost of the construction is small, comparatively speaking, and there will be no diversion of any business from the Rock Island.

It is argued by the Rock Island that the fact that the distance between the AMF plant and the Missouri Pacific is much shorter than the distance between that plant and its own line should be disregarded because, as it contends, the entire industrial area has been planned as a unit and should be so considered, that both roads have been invited into the district, and that any building of track to serve an industry in the area amounts to a serving of the entire area. No authority is cited in support of that argument, and we have found no cases holding that an industrial site located within the normal territory of one carrier ceases to

---

7. Such revenue was referred to in the evidence as "net revenue," which term simply means the amount of freight retained by the initial carrier; it is not to be confused with "net profits."

be in such territory merely because it becomes a part of an "industrial area" acquired by a development company thereafter formed. As we have said, we think that if the AMF company had simply purchased its site from an individual owner, and if the Development Company and its plans had not been involved, the site would clearly have been within the Missouri Pacific's territory; and we do not think that the situation is changed by the mere fact that AMF acquired its property from the Development Company and that those companies desire multiline service. To hold otherwise would be to permit the plans and wishes of development companies and shippers to affect the national policy reflected in the Transportation Act of 1920, which should not be allowed.

It is further argued by the Rock Island that the present contention of the Missouri Pacific that it is not proposing to serve the entire area but solely the AMF plant does not represent its actual intent which, it is claimed, is to serve the entire area to the complete exclusion of the Rock Island. In support of that argument Rock Island points to certain allegations in the Missouri Pacific's complaint in No. 3014 in this court, to certain recitals in the proceedings in the United States District Court at St. Louis whereby that Court granted permission to the Missouri Pacific to acquire right of way and undertake construction of the trackage in question, and to certain allegations in certain condemnation proceedings in the State courts commenced by the Missouri Pacific to acquire right of way, as indicating that the Missouri Pacific proposes to serve the entire industrial district and to claim all of it as its exclusive territory.

While it is doubtless true that the Missouri Pacific will ultimately desire to serve the entire district when and if it is developed industrially, we are not here concerned with the ultimate plans or desires of that road, but, rather, with what it is actually undertaking to do at this time; and we are satisfied that its immediate purpose and intent are to serve AMF solely. If in the future the Missouri Pacific should undertake to build further into the district or to serve other industries located therein, it will be time enough to consider whether or not such activities constitute an extension of line. An argument similar to that of the Rock Island which is now being discussed was advanced and rejected in New York Central R. Co. v. Chicago & E. I. R. Co., supra, 222 F.2d 828.

■ Passing now to the alternative claims of the plaintiff, we find, in the first place, that, although the defendant argues to the contrary, the plaintiff does at the present time have a real desire and intent to build into the district, if it can legally do so, and to serve the district in its entirety, or at least the AMF plant; and we further find that the Missouri Pacific is taking the position that such cannot be done by the Rock Island without authority from the Commission. Hence, there is an existing controversy between the parties relative to Rock Island trackage with respect to which we have jurisdiction under the Declaratory Judgments Act.

■ With regard to plaintiff's first claim for declaratory relief, namely that we should enter a judgment declaring that Rock Island may build trackage designed to serve the entire district without obtaining a certificate, little need be said. As pointed out, the fundamental position of the Rock Island in this case is that a building into the district either by it or by the Missouri Pacific would constitute an extension of line, rather than a spur or industrial track. Its first claim for declaratory relief just mentioned presupposes a determination by us that the district is to be considered as a unit, that the proposed trackage of the Missouri Pacific amounts to a building into the district, considered as a unit, and that such trackage constitutes merely a spur or industrial track; and it argues from that premise that if the Missouri Pacific has a right to build into the district without a certificate, the Rock Island would have a similar right. But the Rock Island's premise has been destroyed by our holding that the district is not to be

considered as a unit, and that the Missouri Pacific's trackage will not amount to an invasion of the district in its entirety; and we feel that the Rock Island's conclusion falls with its premise. For that reason the first claim for declaratory relief will be denied.

Coming now to the plaintiff's second alternative prayer, that is to say to its prayer that we find and declare that if the Missouri Pacific's proposed trackage to the AMF property is but a spur or industrial track, then a track built by the Rock Island to the same property would also be such a track. It does not necessarily follow, however, from · our determination that the Missouri Pacific's proposed trackage is within the exemption of paragraph 22 of Section 1 of the Act, that the Rock Island's proposed trackage to AMF is likewise within that exemption.

We have already pointed out the differences in distance and in costs between trackage from the Missouri Pacific to AMF and trackage from the main line of the plaintiff to that company.[8] In addition to those differences, the difference in the terrain between the defendant and AMF and that between the Rock Island and AMF is such that trackage from the latter road to the plant will involve substantial engineering problems not presented in connection with the Missouri Pacific's proposed trackage, and a line of track from the Rock Island to AMF would be a much more substantial undertaking than the line which the Missouri Pacific proposes to build. An examination of the maps introduced in evidence, and the testimony of the witnesses show that the land between the main line of the Missouri Pacific and the AMF site along which the defendant's track is to be laid is gently rolling and is well adapted to the laying of a simple spur or in-

dustrial track; between the Rock Island and AMF, on the other hand, lies Little Fourche Creek which will have to be bridged; moreover, after the stream proper has been traversed, a dump will have to be built to carry the track over the Little Fourche bottoms. Mr. Ware, the Rock Island division engineer, testified that his company would bridge Little Fourche Creek with a wooden trestle to which he assigned a useful life of about forty years, but admitted that it would take maintenance to keep it in use for that long a period; he further testified that the dump that would be built would be ten feet high, which would not be sufficient to place the track above the level of very high floods, although, in all probability, it would be sufficient to protect it from normal floods. He also testified that it would cost $42,000 to bring his road's track from Twen Cen to the east line of the Development Company's property, and that after that line was reached, there would still be about 3500 feet to go in order to reach the northeast corner of the AMF property. In appraising these facts it should be kept in mind that not only does the Rock Island intend to go to the trouble and expense just outlined of serving one industry only, but also, as stated, that the Little Rock Industrial District Railroad Company now has pending before the I.C.C. its own application for a certificate authorizing the construction and operation of an independent line of railroad throughout the district.

Added to the foregoing factors, is the consideration that a construction of a line of track from the Rock Island to AMF, the site of which latter company we have found to be in the Missouri Pacific's territory, will inevitably be highly detrimental to the revenues of the latter road without any corresponding direct financial advantage to AMF.[9] We have

8. The Rock Island proposes to start its track at a point known as "Twen Cen," which is within its switching and yard limits and at which it has substantial facilities.

9. Counsel for the Rock Island conceded in argument with commendable candor that

from the standpoint of freight rates AMF will gain nothing by multi-line service if its plant site is placed within the Missouri Pacific's reciprocal switching limits at Little Rock. While he did point out that there are certain advantages to an industry to have multi-line service,

seen that it is expected that the first year's operations of AMF will yield retained revenue to the initial carrier or carriers of about $100,000; if the Rock Island should build into the AMF plant, it is obvious, under the circumstances here present, that the Missouri Pacific's share of that revenue would be·diminished by at least one-half.

■ From a reading of the decisions in Texas & Pacific Railway Co. v. Gulf, C. & S. F. R. Co., and Union Pacific R. Co. v. Denver & R. G. W. R. Co., both supra, it seems clear that the national policy underlying the Transportation Act was two-fold: first, to prevent wasteful or extravagant expenditures of funds by railroads for construction, and, second, to prevent cut-throat competition. In our opinion, to declare that the Rock Island may build to the AMF plant without a certificate of public convenience and necessity would violate that policy in both respects. Although it may be conceded that in this particular instance the expenditure involved would not seriously affect a road as strong as the Rock Island, it must be remembered that particular instances can be multiplied, and that a carrier may·weaken itself and dissipate its resources through many small extravagancies as well as by a few large ones. It was one of the purposes of Congress in passing the Act to prevent waste and extravagance in railroad construction; and we do not feel that the federal courts, in exercising the jurisdiction conferred upon them by paragraph 20, are called upon to determine relative degrees of waste or to attempt to draw any line between extravagancies that are serious and those that are not. Certainly, the courts are not concerned with balancing the expense of construction against the public convenience and necessity. Those are matters more properly addressed to the expert judgment of the I.C.C. But even if we assume for purposes of argument that wasteful construction is not a factor here, there is no question that to permit the Rock Island to build in to the AMF property would adversely affect the Missouri Pacific in its revenues.

Under the facts presented here we are unable to find that the Rock Island's proposed construction to AMF is simply a spur or industrial track; on the other hand, it appears to us that said proposed construction would be an extension of the Rock Island's line of railroad which cannot lawfully be undertaken without the sanction of the Commission; and it follows that Rock Island's second alternative prayer for declaratory relief must likewise be denied. Of course, our holding here does not in any manner preclude the Rock Island from applying to the Commission for permission to build into the district to serve all of it or any part of it, and the Commission has the power to grant such permission and will doubtless do so if a proper showing of public convenience and necessity is made. We do not overlook Rock Island's argument that if the Missouri Pacific is allowed to serve AMF to the exclusion of the Rock Island it will have "gotten its foot in the door" with respect to the remainder of the district; in that connection, we do not know what weight the I.C.C. might under the circumstances here present give to the fact that AMF is being served by the Missouri Pacific should an application be made by the Rock Island for a certificate authorizing it to build to AMF or to some other point in the area, but that is a matter over which we have no control.

Before concluding this memorandum, we desire to make it clear that we are not holding that the entire industrial district is within the exclusive territory of the Missouri Pacific, or that construction by the latter road into the district beyond the AMF plant would not be an extension of its line. Those are matters that can be considered if and when they arise. Moreover, should new industries locate in the eastern part of the district in close proximity to the line of the Rock

those advantages, while doubtless real, appear to us to be indirect and somewhat speculative; no attempt was made to value them moneywise.

Island, the same line of reasoning that has led us to conclude that the Missouri Pacific's proposed trackage is simply a spur or industrial track, might lead us to the same conclusion as far as thè Rock Island is concerned with respect to industries so located.

Let a decree be entered dismissing the complaint of the plaintiff in its entirety with prejudice and at the plaintiff's cost.