CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, Plaintiff,

v.

CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Defendant.

Civ. A. No. P–2354.

United States District Court
S. D. Illinois, N. D.

Nov. 15, 1960.

Eugene R. Johnson, Miller, Westervelt & Johnson, Peoria, Ill., for plaintiff, Martin L. Cassell, Thomas I. Megan, Chicago, Ill., of counsel.

Edgar Vanneman, Jr., Chicago, Ill., John Cassidy, Cassidy & Cassidy, Peoria, Ill., for defendant.

MERCER, Chief Judge.

Plaintiff, Chicago, Rock Island and Pacific Railroad Company, prosecutes this action for an injunction to stay the defendant, Chicago and North Western Railway Company, from building a proposed track leading into an area near Peoria, Illinois, known as Pioneer Industrial Park, and hereinafter referred to as the Park. The cause was taken under advisement upon the pleadings, the evidence and the briefs and arguments of counsel. The memorandum opinion which follows incorporates the findings of fact and conclusions of law of the court.

The area involved in this dispute was unimproved farm land until the latter part of 1959 although zoned as industrial. For many years the defendant has maintained a main line track between Chicago and East St. Louis, Illinois, which runs in a generally north-south direction at the point of contention. Plaintiff for many years has maintained a main line track between Peoria and Rock Island, Illinois, which runs in a northeast-southwest direction in the area of contention and is situated approximately two and one-half miles easterly of defendant's main line track.

In September, 1959, the Park was dedicated by Peoria Industrial Enterprises, Inc., for the purpose of attracting industry to there locate. The Park, is situated northwesterly from the City of Peoria and, as presently proposed by the proprietor, Peoria Industrial Enterprises, contains some 640 acres of land. Of that proposed area, the proprietor has acquired approximately 340 acres, all of which lies westerly from and immediately adjacent to plaintiff's Peoria-Rock Island main line track. As envisioned by the proprietor, the Park is ultimately contemplated to include lands which are easterly from and immediately adjacent to plaintiff's track. Beginning in 1960, as industries were attracted to the Park, plaintiff built a spur track to serve the C. A. Reed Co., and is presently building a second spur track to serve the Super Valu warehouse which is under construction in the Park.

Defendant has obtained a right of way across open lands and proposes to build a track from Radnor, Illinois, on its Chicago-East St. Louis main line, into the Park to serve the Muirson Label Company, a division of International Paper Company. At the point of its closest proximity thereto, defendant's main line is situated one and three-tenths miles west of the southwest corner of the Park. The trackage proposed to be built by defendant would extend in a northeasterly direction from Radnor one and nine-tenths miles across Section One (1), Township Nine (9) North, Range Seven (7) East

of the Fourth Principal Meridian, and Section Six (6), in Township Nine (9) North, Range Eight (8) East of the Fourth Principal Meridian, all in Peoria County, Illinois, to the site of the Muirson Plant. The proposed trackage is presently intended to serve the Muirson plant only, though defendant contemplates that additional trackage might be built to serve others, as new industries should move into the Park. Also, the character of the service contemplated is that commonly rendered to industries by spur or industrial tracks. Both Muirson and International have requested that defendant serve them, and officials of the Park desire to have defendant's service available to their industrial area.

By its complaint Plaintiff contends that the trackage proposed to be constructed by defendant constitutes an extension of its line of railroad into an area which has not heretofore been served by defendant within the meaning and contemplation of paragraph (18) of Section 1 of the Interstate Commerce Act, 49 U.S.C.A. § 1(18),[1] and that such construction of trackage cannot lawfully be done without authorization therefor by a certificate of public convenience and necessity from the Interstate Commerce Commission. Plaintiff prays that an injunction issue staying the proposed construction until and unless defendant shall have obtained a certificate of convenience and necessity from the Commission authorizing such extension of defendant's line.

Defendant, by its answer, denies that the proposed trackage is an extension of its line. It avers that the proposed construction is merely a spur or industrial track for which no certificate of public convenience and necessity is required. 49 U.S.C.A. § 1(22).[2]

The court has jurisdiction of the parties and of the subject matter under paragraph (20) of Section 1 of the Interstate Commerce Act, 49 U.S.C.A. § 1(20), and Section 1337 of the Judicial Code, 28 U.S.C.A.

The only issue before the court for decision is whether the trackage proposed to be built by defendant is an extension of its line as plaintiff contends, or whether it is a spur or industrial track within the meaning of 49 U.S.C.A. § 1(22). If that construction is an extension of line as plaintiff alleges, it is unlawful until and unless defendant has obtained a certificate of convenience and necessity from the Interstate Commerce Commission. On the other hand, if the proposed construction is of a spur or industrial track only, the Commerce Commission has no jurisdiction and the complaint should be dismissed.

That issue presents a mixed question of law and fact. United States v. Idaho, 298 U.S. 105, 109, 56 S.Ct. 690, 80 L.Ed. 1070. The legal considerations bearing upon the question were stated by Mr. Justice Brandeis in Texas & Pacific Ry. Co. v. Gulf, C. & S. F. Ry. Co., 270 U.S. 266, at pages 278-279, 46 S.Ct. 263, at page 266, 70 L.Ed. 578 in the following language:

"When the clauses in paragraphs 18 to 22 are read in the light of this congressional policy, [to foster the development and maintenance of an adequate railway system, by means including restrictions upon competition] the meaning and scope of the

1. Paragraph (18) provides in pertinent part:

"No carrier by railroad subject to this chapter shall undertake the extension of its line of railroad, or the construction of a new line of railroad, * * * unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such ad-

ditional or extended line of railroad, * * *."

2. Paragraph (22) provides in pertinent part:

"The authority of the Commission conferred by paragraphs (18) to (21) of this section, both inclusive, shall not extend to the construction * * * of spur, industrial, team, switching, or side tracks, located or to be located wholly within one State, * * *."

terms extension and industrial track become clear. The carrier was authorized by Congress to construct, without authority from the Commission, 'spur, industrial, team, switching or side tracks * * * to be located wholly within one state.' Tracks of that character are commonly constructed, either to improve the facilities required by shippers already served by the carrier or to supply the facilities to others, who being within the same territory and similarly situated are entitled to like service from the carrier. The question whether the construction should be allowed or compelled depends largely upon local conditions which the state regulating body is peculiarly fitted to appreciate. Moreover, the expenditure involved is ordinarily small. But where the proposed trackage extends into territory not theretofore served by the carrier, and particularly where it extends into territory already served by another carrier, its purpose and effect are, under the new policy of Congress, of national concern. For invasion through new construction of territory adequately served by another carrier, like the establishment of excessively low rates in order to secure traffic enjoyed by another, may be inimical to the national interest. If the purpose and effect of the new trackage is to extend substantially the line of a carrier into new territory, the proposed trackage constitutes an extension of the railroad within the meaning of paragraph 18, although the line be short, and although the character of the service contemplated be that commonly rendered to industries by means of spurs or industrial tracks. Being an extension, it cannot be built unless the federal commission issues its certificate that public necessity and convenience require its construction."

When the standard established by the Texas & Pacific case is applied to the facts of the case at bar, it leads inevitably to the conclusion and finding that the trackage proposed to be built by defendant is an extension of line within the meaning of paragraph (18), not a spur or industrial track. The Park area lies immediately adjacent to plaintiff's line and, as ultimately proposed, will lie astride that line. The fact is, it appears from the evidence that, with one exception, both plaintiff and defendant, prior to the dedication of the Park, employed the farm land area north and northwest of Peoria simply as a conduit through which their respective lines ran. The one exception which appears from the evidence is defendant's construction and maintenance of a team track at Radnor, which is located West and slightly South of the southwest corner of the Park. Thus until the dedication of the Park, neither carrier served industries within this general area through which they passed because there was no industry there to be served. With the dedication of the Park, industry has begun to move in and, as previously noted, the plaintiff has constructed spur tracks to serve that industry as needed. All new industries, including the Muirson plant, are located within the space of less than one mile from plaintiff's line, and in an area to which defendant has not previously extended its service. The effect of the proposed trackage would be to extend defendant's operations into an area not previously served by it which is immediately adjacent to plaintiff's line.

Of the cases to which the court is referred, those of Union Pacific R. Co. v. Denver & R. G. W. R. Co., 10 Cir., 198 F.2d 854, and Chicago, R. I. & P. R. Co. v. Illinois Commerce Commission, 414 Ill. 134, 111 N.E.2d 136, are most closely analogous factually to the case at bar. In the Union Pacific case, Union Pacific maintained main line tracks through Salt Lake City which passed, roughly, one block east of an industrial development area. The Rio Grande maintained a main line track through the same general section of the city which passed approximately one block west of the same industrial area, and also an interchange

track which angled generally across the industrial area and across the Union Pacific tracks to a connection with a third railroad. Union Pacific's attempt to enter the area by the construction of 9,000 feet of trackage was enjoined as being an extension of its line and unlawful unless the railroad first obtained a certificate of public convenience and necessity from the Commerce Commission.

In the Rock Island case, the Illinois Central Railroad and a subsidiary maintained tracks which passed along the west and south sides of an area known as the Lake Calumet Harbor area. The Pullman Railroad, a subsidiary of Rock Island, maintained tracks roughly parallel to the Illinois Central tracks on the west side of the Harbor area which were situated eastwardly therefrom and on the south side of the Harbor area situated in a northerly direction therefrom. Such industries as were located in the Harbor area were served by Pullman. The case reached the courts upon a petition to review a decision of the Illinois Commerce Commission authorizing Illinois Central to construct trackage at grade from its line across the Pullman lines and into the Harbor area. In affirming a judgment of the trial court reversing the State Commission order, the Illinois Supreme Court held that the proposed construction was an extension of Illinois Central's line and was unlawful without a certificate of convenience and necessity for the extension first obtained from the Interstate Commerce Commission.

The analogy of the summarized cases to the case at bar is only partial, since each presented a situation of prospective expansion of an established industrial area, whereas the court is here concerned with the establishment and promotion of a new industrial area. Those cases do serve to pinpoint the language of Mr. Justice Brandeis that "where the proposed trackage extends into territory not theretofore served by the carrier, and particularly where it extends into territory already served by another carrier,

its purpose and effect are, under the new policy of Congress", an extension of line requiring Commerce Commission approval. Here, by the chance of selection of a site, the Park area lies adjacent to and, as proposed, will lie astride plaintiff's main line. By the same chance of location of the Park area, the development area lies outside the area previously served by defendant. It thus appearing that plaintiff has rail facilities extending adjacent to and through the area being developed, the question whether invasion of that area by defendant is to be permitted is declared by paragraph (18) to be an issue within the Commission's jurisdiction.

The court has not considered evidence bearing upon the relative capabilities of the two railroads for rendering adequate service to the Park area, or evidence as to the desires of the Park proprietors or of industrial plants located within the area. That evidence in each instance is probative, not of the factual question which the court has to decide, but of the question whether public convenience and necessity would require that defendant enter the area in competition with plaintiff. This court has nothing to do with that question of public convenience and necessity, since Congress has entrusted its decision to the jurisdiction of the Commerce Commission. Missouri, K. & T. R. v. Texas & N. O. R. Co., 5 Cir., 172 F.2d 768; Chicago, R I. & P. R. Co. v. Thompson, D.C.E.D.Ark., 135 F.Supp. 43, 48. Public convenience and necessity may well justify the construction of defendant's proposed trackage into the Park, but the Commerce Commission alone has the authority to make that decision. I find and conclude only that the proposed construction is unlawful until and unless it has been authorized by the Commerce Commission.

Neither United States v. Idaho, 298 U.S. 105, 56 S.Ct. 690, 80 L.Ed. 1070; New York Central R. Co. v. Chicago & E. I. R. Co., 7 Cir., 222 F.2d 828; Chicago, M. St. P. & P. R. Co. v. Chicago &

**554**

E. I. R. Co., 7 Cir., 198 F.2d 8; Missouri, K. & T. R. Co. v. Texas & N. O. R. Co., 5 Cir., 172 F.2d 768, nor Pennsylvania R. Co. v. Reading Co., D.C.E.D.Pa., 132 F. Supp. 616, impinges upon the conclusion and finding that the proposed construction in this case is an extension of defendant's line within the meaning of paragraph (18). In the Idaho case, in an opinion by Mr. Justice Brandeis, the court held that nine miles of track built by the Oregon Short Line Railroad to serve a mine located in Talbot,.Idaho, was a spur, affirming the trial court's finding that the trackage was constructed to serve a single industry and that it constituted no invasion of new territory. There was no question of competition with any other railroad.

In the New York Central case, the area involved was adjacent to both the lines and switching facilities of C. & E. I. and in an area not previously served by New York Central.

In each the Chicago, Milwaukee & St. Paul case, the Missouri, Kansas & Texas case, and the Reading case, the area involved in litigation was in each instance an area which had for some years been served competitively by both of the competing railroads.

I conclude that the trackage proposed by defendant to be constructed constitutes an extension of line within the meaning of paragraph (18) since it extends into an area which defendant has not previously served and into an area which is being served by plaintiff. The construction of that trackage is, therefore, unlawful until and unless defendant shall have applied to the Commerce Commission and received a certificate of convenience and necessity therefor.

Judgment is entered permanently enjoining defendant from construction of the proposed trackage until authority therefor has been obtained by an application to the Commerce Commission. An injunction order signed this date is filed with this memorandum opinion.